IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERENCO ECUADOR LTD.,<br><br>    *Petitioner*,<br><br>vs.<br><br>REPUBLIC OF ECUADOR,<br><br>    *Respondent*. | Case No. 1:19-cv-02943-KBJ |

### RESPONDENT'S UNOPPOSED MOTION AND MEMORANDUM TO ENLARGE TIME TO RESPOND TO PETITION TO ENFORCE ARBITRAL AWARD

Respondent, the Republic of Ecuador ("**Respondent**" or the "**Republic**") respectfully submits this motion and memorandum to enlarge the stipulated time for the Republic to respond to the Petition to Enforce Arbitral Award (ECF No. 1) (the "**Petition**"). Counsel for Petitioner has authorized the undersigned counsel to advise the Court that this motion is **unopposed**. For the reasons stated below, the Court should enlarge the stipulated due date by twelve (12) calendar days from the current agreed due date of July 28, 2021, to August 9, 2021.[1]

### BACKGROUND

**I.   THE PARTIES AND THE ARBITRAL AWARD (PRIOR TO PARTIAL ANNULMENT)**

Petitioner Perenco Ecuador Limited ("**Petitioner**" or "**Perenco-Ecuador**") is an entity established under the laws of the Commonwealth of the Bahamas. The Republic is a foreign

---

[1] At the outset, the Republic observes that pursuant to the Court's Minute Order dated December 26, 2019, "this matter is STAYED until further Order of the Court." We understand that Petitioner intends to file a motion to lift the stay. We have advised Petitioner that the Republic does not oppose its motion to lift the stay. In return, Petitioner has agreed not to oppose this motion for an extension.

sovereign State as defined in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a). (The Republic and Perenco-Ecuador are collectively referred to herein as the "**Parties**.")

Perenco-Ecuador filed the Petition in this Court on October 1, 2019. Perenco-Ecuador seeks to enforce an arbitral award against the Republic (the "**Award**") that has now been partially annulled (as discussed below). The Award was rendered under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "**ICSID Convention**").[2] *See* Petition, ¶ 1. As set forth in the Petition, the arbitral tribunal (the "**Tribunal**") awarded $448,820,400 to Perenco-Ecuador for its claims, plus interest; it awarded $54,439,517 to the Republic for its counterclaims, plus interest. *Id*. ¶ 25.[3] The Tribunal also ordered each party to pay a portion of the other's legal fees and costs. The Tribunal ordered the Republic to pay Perenco-Ecuador a total of $23,000,000 in legal fees and costs (plus interest); it ordered Perenco-Ecuador to pay the Republic a total of $6,276,153 in legal fees and costs (plus interest), resulting in a net fees and costs award to Perenco-Ecuador in the amount of $16,723,847. *Id*. ¶ 26.[4]

According to the Petition, "the Award [prior to partial annulment] thus entitled Perenco to the net amount of $411,042,817.89 as of October 1, 2019, subject to adjustments for interest

---

[2] Arbitrations under the ICSID Convention are administered by the International Centre for Settlement of Investment Dispute ("**ICSID**"), which is part of the World Bank Group. Petitioner has attached a copy of the ICSID Convention as Exhibit D to the Declaration of Ada Fernandez Johnson In Support Of Petition To Enforce Arbitral Award dated October 1, 2019 ("**Fernandez Johnson Declaration**") (ECF No. 1-1). ICSID awards are enforced in the United States pursuant to 22 U.S.C. § 1650a. Petitioner has attached a copy of the Award as Exhibit A to the Fernandez Johnson Declaration. The case name and number assigned by ICSID to the arbitration is: *Perenco Ecuador Limited v. Republic of Ecuador*, ICSID Case No. ARB/08/6.

[3] All monetary amounts stated herein are in U.S. dollars.

[4] The Tribunal also ordered Perenco-Ecuador to pay Petroecuador, a state-owned company, $49,629.76 for its legal fees and costs. Petition, ¶ 27.

specified in the Award." *Id.* ¶ 1.

## II. THE ANNULMENT PROCEEDINGS AND THE STAY OF THIS ACTION

Under Article 52 of the ICSID Convention, either party may seek annulment of an ICSID award by making an application to the ICSID Secretary-General (the "**Secretary-General**") within 120 days after the date on which the award was rendered. The Secretary-General then appoints "an *ad hoc* Committee of three persons" (the "**Annulment Committee**") to decide the annulment application.[5] The Republic timely filed an annulment application (the "**Annulment Application**") with ICSID on October 2, 2019. *See* Parties' Joint Stipulation and Proposed Order submitted to the Court on December 9, 2019 (the "**Joint Stipulation**"), at 1 (ECF No. 7). The Secretary-General registered the Annulment Application on October 4, 2019, and granted the stay of enforcement of the Award requested by the Republic therein (the "**Automatic Stay**"). *Id.* at 2.[6] The Parties agreed in the Joint Stipulation that the Republic would respond to the Petition on the 61st day following the expiration of the Automatic Stay or—if the Annulment Committee granted the Republic's request for a further stay (the "**Further Stay**")—then the Republic would respond to the Petition on the 61st day following the expiration of the Further Stay. *Id.* ¶¶ 1-3, at 2-3.

By Minute Order dated December 26, 2019, this Court construed the Joint Stipulation as a motion to stay and, on that basis, granted the motion. (However, the Court made no mention of

---

[5] As opposed, for example, to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "**New York Convention**"), parties to ICSID arbitration do not seek annulment of arbitral awards by a competent authority of the country in which the award was made. Instead, the ICSID Convention provides its own internal procedure for the resolution of annulment requests.

[6] Under Article 52(5) of the ICSID Convention, if the applicant requests a stay of enforcement in its annulment application, a stay is automatically put in place on a provisional basis, until the Annulment Committee can address the request for a stay.

the due date for the Republic's response and does not appear to have incorporated the date into its Order.) In the Minute Order, the Court ordered that "this matter is STAYED until further Order of this Court." The Court ordered further that "notwithstanding the stay, on or before 3/25/2020, and every 90 days thereafter, the parties shall file a joint status report updating this Court on the proceedings before the Tribunal." (The Parties have duly filed such joint status reports.)

The Annulment Committee subsequently granted the Republic's request for a Further Stay pending the resolution of the Annulment Application, based on the Republic's commitment "to pay the Award unconditionally, voluntarily and in full, within 60 days after the Committee decides on the Application for Annulment, if the Application were not to be upheld [i.e., granted] in full or in part, and attesting that such payment shall not be subject to any enforcement proceedings or to the intervention of Ecuador's courts." Decision on the Stay of Enforcement of the Award, ¶ 82(a).[7] However, the Annulment Application *was* granted in part. On May 28, 2021, the Annulment Committee unanimously decided to "partially annul" the Tribunal's decision to award $25,000,000 for "Perenco's loss of opportunity to extend the Block 7 Participation Contract," as well as its decision to award $9,000,000 on account of "the Tribunal's finding that the OCP ship-or-pay costs were fully tax-deductible." Decision on Annulment, ¶ 744(b) (citations omitted).[8] The Republic has advised Perenco-Ecuador that it will seek to offset

---

[7] The Annulment Committee's Decision on the Stay of Enforcement is attached as Exhibit A to the Parties' Joint Status Report dated March 25, 2020 (ECF No. 8). The Annulment Committee subsequently affirmed that it had received the Republic's confirmation, which "complie[d] in form and substance with the requirement of paragraph 82(a) of the Decision on the Stay" and that the stay of enforcement therefore remained in place. Procedural Order No. 2, ¶¶ 5, 6 (attached as Exhibit A to the Parties' Joint Status Report dated June 23, 2020 (ECF No. 11)).

[8] The Decision on Annulment is attached as Exhibit A to the Parties' Joint Status Report dated June 21, 2021 (ECF No. 15).

the net amount of the Award with liability for unpaid taxes and other liabilities in Ecuador that Perenco-Ecuador owes to the Republic, and that the Republic therefore plans to submit a partial opposition to the Petition and a cross-motion for offset. Counsel for the Republic subsequently advised Perenco-Ecuador that it intended to move for an enlargement of the stipulated due date of Wednesday, July 28, 2021—by 12 calendar days—to Monday, August 9, 2021. Earlier today (i.e., July 27, 2021), Perenco-Ecuador's counsel advised the Republic's counsel that Perenco-Ecuador does not oppose this motion for extension.

## ARGUMENT

"A court may extend a filing deadline when the moving party requests an extension before the original filing deadline and shows good cause." *Jordan v. U.S. Department of Justice*, 315 F. Supp. 3d 584, 594 (D.D.C. 2018); *see* Fed. R. Civ. P. 6(b)(1). A request filed before the original deadline expired should be granted if a party "articulate[s] appropriate reasons for requesting an extension" and the other party "will not suffer any prejudice because the short extension would have had little, if any, impact on the judicial proceedings of an action . . . ." *Jordan*, 315 F. Supp. 3d at 594.

The Republic has good cause for requesting the 12-day extension of the stipulated due date. The tax and other liabilities owed by Perenco-Ecuador to the Republic are significant and, if the Republic is successful in its cross-motion for setoff, will partially offset the amounts owed by the Republic under the Award.[9] The Republic's interests include not only offsetting the

---

[9] This Court has specifically recognized that a sovereign State may seek to offset an ICSID award with tax liability owed to the State. *See Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 284 (D.D.C. 2019). In *Micula*, the Court ultimately declined Romania's tax offset claim (while allowing Romania other offsets against the ICSID award), but only because (a) the Court "assume[d]" that the law of Romania governed the set-off question in that case and (b) a Romanian court had declared that the asserted tax setoffs were not available under Romanian law to offset the State's civil liability. *Id.*

substantial amount stated in the Award (even after partial annulment). It is a basic obligation of the State to ensure that taxes are paid, and that tax and other liabilities are discharged.

The Republic had hoped to complete the organization and translation of the documentation needed to support its cross-motion for setoff by the originally stipulated due date of July 28, 2021. However, liabilities for which the Republic seeks offset arise from numerous different proceedings, at different stages of progress, and the Republic needs an additional 12 days to finish its work.

Perenco-Ecuador will not be prejudiced by this short extension and, as stated above, has advised the Republic that it does not oppose this motion. Accordingly, the Court should grant the Republic's unopposed motion and extend the due date for the Republic to respond to the Petition to August 9, 2021.

## CONCLUSION

For all the foregoing reasons, the Court should grant the Republic's motion to enlarge the stipulated due date to respond to the Petition from July 28, 2021, to August 9, 2021. A proposed Order is attached.

Dated: July 27, 2021

Respectfully submitted,

*/s/ Alexandre de Gramont*
Alexandre de Gramont
D.C. Bar No. 430640
DECHERT LLP
1900 K Street NW
Washington, DC  20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
alexandre.deGramont@dechert.com

*Counsel for the Respondent*

6