IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERENCO ECUADOR LTD.,

    *Petitioner*,

vs.

REPUBLIC OF ECUADOR,

    *Respondent*.

Case No. 1:19-cv-02943-KBJ

**REPLY IN SUPPORT OF RESPONDENT'S MOTION TO ENLARGE
TIME TO FILE REPLY IN SUPPORT OF CROSS-MOTION FOR SETOFF**

  As stated in the Republic of Ecuador's Motion and Memorandum to Enlarge the Time to File Reply in Support of Cross-Motion for Setoff (ECF No. 34) ("**Motion to Enlarge**"), we understand that Petitioner is eager to bring the instant action to a rapid conclusion.  However, Petitioner has made a number of assertions in its Opposition to the Republic's Motion to Enlarge (ECF No. 35) (the "**Opposition**") that are neither accurate nor fair.  Certainly, none has merit.  We will try not to repeat the arguments in our Motion to Enlarge.  But in reply to Petitioner's Opposition, we offer the following additional points as to why the Court should grant the Motion to Enlarge:

  1. Petitioner begins by asserting that Ecuador has "dragg[ed] out this dispute for more than a decade" (Opposition, at 1)—apparently to support the proposition that Petitioner will suffer undue prejudice if the Court grants the Republic's request for a 21-day extension to file its Reply in support of setoff.  The suggestion appears to be that Petitioner made a perfectly reasonable and justified request for compensation when it commenced the arbitration—to which the Republic of Ecuador ("**Ecuador**" or the "**Republic**") should have simply acceded, but which

the Republic instead unreasonably opposed. In fact, Petitioner demanded nearly ***$1.7 billion*** in damages from the Republic in the arbitration. *See* Award, ¶ 59 (ECF No. 1-2). The Republic had the right—indeed, the obligation—to oppose Petitioner's exorbitant claims, including by (*inter alia*) seeking counterclaims for the significant environmental contamination caused by Petitioner's operations in the Amazon region. Ultimately, the damages awarded by the Tribunal to Petitioner (including for attorney' fees, costs, interest—and including the setoff for the Republic's counterclaims) amounted to approximately $412 million. *See* Award, ¶ 1023. The ICSID Annulment Committee further reduced those amounts by approximately $34 million—yielding a damages award in favor of Petitioner of ***approximately $378 million***, reducing Petitioner's original's damages claim by ***over 75%***.[1] Moreover, as the Tribunal observed in its Award, the underlying arbitration took a long time to complete not only because of the enormous amounts in controversy—but also due to various factors beyond the parties' control (including, for example, the death of the original presiding arbitrator, Lord Bingham, in 2010). *Id*., ¶¶ 50-51. In short, it is unfair and inaccurate to assert that Ecuador has needlessly "dragg[ed] out this dispute" and that the Court should therefore deny its Motion to Enlarge. And it borders on the absurd to assert that—under the circumstances of this case—Petitioner will be prejudiced if the Court grants the Republic a 21-day extension to submit its Reply. Again, according to Petitioner, post-Award, pre-Judgment interest is accruing on the Award at a rate of "***about $23,000 per day***."[2] Petitioner has shown no prejudice—none—that would result from the relatively modest extension that the Republic needs to prepare its Reply in support of its Cross-Motion.

---

[1] As the Parties reported to the Court, that amount had grown to $391,393,984 as of July 27, 2021, due to post-Award interest. Supplemental Joint Status Report (ECF No. 17), at 2.

[2] Perenco's Consolidated Response to the Republic of Ecuador's Partial Opposition to Petition to Enforce the Arbitral Award and Cross-Motion for Setoff (ECF No. 30) ("**Response to Cross-Motion**"), at 5 (emphasis added).

2. Petitioner also argues that the Republic has not demonstrated good cause for the extension it has requested. Here, Petitioner begins by incorrectly asserting that the Republic "had nearly two years to prepare its Partial Opposition and Cross-Motion[.]" Opposition, at 1. **First**, the assertion is simply wrong. The Republic did not and could not begin to prepare its Cross-Motion until *after* the ICSID Annulment Committee issued its Decision on Annulment on May 28, 2021. As we have previously explained, the Annulment Committee annulled (*inter alia*) that part of the Award finding that OCP ship-or-payment costs were fully tax deductible. *See Perenco v. Ecuador*, *Ad hoc* Annulment Committee's Decision on Annulment, ¶ 744(a). The Republic would have been hard-pressed to seek setoff for tax judgments in Ecuador concluding that Petitioner had improperly deducted the OCP ship-or-payment costs—if the portion of the Award concluding that such costs were fully tax deductible under Ecuadorian law had not been annulled. **Second**, Petitioner does not and cannot explain why the amount of time in which the Republic had to prepare its Cross-Motion has anything to do with the amount of time that the Republic needs to submit its Reply to Petitioner's Response to Cross-Motion submitted on September 20, 2021.

3. Petitioner also asserts that the Republic "cannot have seriously thought that Perenco would simply accept Ecuador's presentation of the law and the facts." Opposition, at 4-5. As far as it goes, that assertion is generally true. However, we submit that the Republic reasonably did not anticipate that Petitioner would argue that precedent from **this** Court—relying on precedent from the U.S. Court of Appeals for the Second Circuit—was based on fallacious reasoning and an incorrect interpretation of the statute that governs this action (22 U.S.C. § 1650(a)); and that this Court in this case should now come to the opposite conclusion. Similarly, the Republic was reasonable not to anticipate that Petitioner would present, *inter alia*, a 70-page

expert report from a partner in the Ecuadorian law firm that represented Petitioner in its tax litigation—to reargue numerous points of Ecuadorian law that Petitioner raised and lost in Ecuador, resulting in judgments that are now final and enforceable.

4. Petitioner asserts further that the Republic's "request for a tax set-off 'fails for six independent reasons, **most of which Ecuador has not even attempted to address**.'" Opposition, at 4 (emphasis added) (quoting Petitioner's Response to Cross-Motion (ECF No. 30), at 2). To the extent that the Republic did not address certain of the numerous arguments made in Petitioner's Response, that is because they are irrelevant to the issue of setoff. The Republic did not try to overcome "obstacles" (to use Petitioner's word) to setoff that do not exist as a matter of fact or law. But that does not mean that the Republic does not have to address all the novel arguments raised by Petitioner and explain to the Court why they are irrelevant or wrong.

5. Indeed, Petitioner argues in its Response to the Cross-Motion that the Republic has a "*Herculean task*" in responding to "*all the obstacles*" it has attempted to erect against the Republic's request for setoff. Response to Cross-Motion, at 38 (emphasis added). Yet Petitioner simultaneously argues in its Opposition to our Motion to Enlarge that the Republic has failed to show any "*exceptional circumstance* that could justify" its request for enlargement. Opposition, 4 (emphasis added). Of course, the standard for an enlargement in this Court is *not* "exceptional circumstances" but rather "good cause." *Jordan v. U.S. Dep't of Justice*, 315 F. Supp. 3d 584, 594 (D.D.C. 2018). Again, as this Court stated in *Jordan*, a motion for enlargement should be granted where, as here, the moving party as "articulated appropriate reasons for requesting an extension" and the other party "will not suffer any prejudice because the short extension would have little, if any, impact on the judicial proceedings of an action . . . ." *Id*. The Republic has shown appropriate reasons for its requested extension. And Petitioner has failed to show how it

will suffer any actual prejudice.

6. Petitioner also complains that the Republic is asking for an extension that would "double" the time for its Reply. Opposition, at 6. But "doubling" the time for the Republic's time—from three weeks to six—merely gives the Republic the same time for its Reply that the Petitioner had to prepare its Response to the Cross-Motion. Given the "Herculean" set of "obstacles" that Petitioner has attempted to put before the Republic's Cross-Motion—including by presenting numerous new arguments that the Republic "has not even attempted to address" (Opposition, at 4) (because Petitioner never made them prior to its Response)—there is more than good cause for this Court to give the Republic adequate time to prepare its Reply. Again, in the context of this overall dispute, an additional three weeks is neither unreasonable nor prejudicial. (Thus, for example, Petitioner asserts that it has consulted with a translation service and ascertained that it should only take "3-4 calendar days" to translate the Expert Report of Ms. Simone and the Witness Statement of Mr. Colombel from English to Spanish. Opposition, at 5. But as we explained, in addition to having to translate those English documents into Spanish, our expert and fact witnesses will prepare their declarations in Spanish—which we will then need to translate into English. The translation issues—which we raised as one relatively minor reason for requesting the extension—will by themselves take over a week to resolve.)

7. Again, the Republic appreciates the professional courtesy shown by Petitioner's counsel in offering a one-week extension. But it is simply inadequate. And we assure this Court that we are not asking for 21 days in the hope that the Court will "split the baby" and give us 10 or 11. We have asked the Court for 21 days because—having reviewed Petitioner's voluminous submission—that is how much time we believe we need to prepare an adequate Reply that will fairly present the Republic's setoff claim in light of Petitioner's Response and assist the Court to

resolve these issues.[3]

8. In the final analysis, in the context of an underlying arbitration that lasted for over a decade—and an enforcement proceeding that only began in earnest when this Court's stay was lifted on Petitioner's unopposed motion on July 28, 2021—Petitioner can show no prejudice that it would suffer by a three-week extension (especially as Petitioner accrues interest which it says amounts to around $23,000 per day). And the Republic has shown good cause for the extension. The amounts of money at stake are enormous (certainly from the Republic's perspective); the legal issues are important and (in some respects) novel; and Petitioner has attempted to throw down a gauntlet of issues, which—regardless of their merit—the Republic must address. Accordingly, the Court should grant the Republic's Motion to Enlarge.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Republic's Motion and Memorandum to Enlarge, the Court should grant the Republic's motion to enlarge the stipulated due date to submit its Reply in support of its Cross-Motion, from October 11, 2021, to November 1, 2021.

---

[3] Nor is Petitioner entirely accurate when it asserts that "Perenco has repeatedly acceded to Ecuador's requests for extensions." Opposition, at 1. It is true that Petitioner agreed not to oppose the Republic's request for an 11-day extension to file its Partial Opposition and Cross-Motion—while, at the same time, the Republic agreed not to oppose Petitioner's request to lift the stay in this action. The Republic then agreed not to oppose Petitioner's request for a one-week extension to file its response, while the parties attempted to agree on a mutually satisfactory briefing schedule. The parties agreed that Petitioner would have six weeks for its response and the Republic would have three weeks for its Reply. Again, while we appreciate the professional relationship we have had with Petitioner's counsel to date, they are formidable advocates who have not "repeatedly acceded" to the Republic's requests for extensions.

Dated:  October 8, 2021                               Respectfully submitted,

/s/ *Alexandre de Gramont*
Alexandre de Gramont
D.C. Bar No. 430640
DECHERT LLP
1900 K Street NW
Washington, DC 20006
Tel: (202) 261-3300
Fax: (202) 261-3333
alexandre.degramont@dechert.com

Michael A. Losco*
N.Y. Bar No. 5356505
Tamar Sarjveladze*
N.Y. Bar No. 5703608
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 641-5645
michael.losco@dechert.com
tamar.sarjveladze@dechert.com
*Admitted *pro hac vice*

*Counsel for the Respondent*

7