

178280966-NP

# REPUBLIC OF ECUADOR
# JUDICIAL BRANCH
## www.funcionjudicial.gob.ec

Case No: 17505200724646, NATIONAL COURT, entry number 1

Case Docket No: 4452
Case Electronic Docket No: 1714766738
efbueno@iusnovaabogados.com
cmoncayo@iusnovaabogados.com
mburbanodelara@iusnovaabogados.com
dfreire@sri.gob.ec
ebueno@abocacia.com
mulloa@abocacia.com
cmoncayo@abocacia.com
malban@abocacia.com
mespinosa@abocacia.com

Date: November 8, 2021
To: CHRISTOPHE DELEPINE, GENERAL AND LEGAL REPRESENTATIVE OF PERENCO
ECUADOR LIMITED
Dr./Attorney: ESTEBAN FRANCISCO BUENO CARRASCO

**SPECIALIZED   TAX   CHAMBER   OF   THE   NATIONAL   COURT   OF   JUSTICE**

The following pertains to Case No. 17505200724646:

Quito, Monday, November 8, 2021, at 10:42 a.m., WHEREAS: To be added to the case, the document submitted by the plaintiff company's Legal Representative on October 15, 2021, at twelve hours and twenty minutes; given that on October 5, 2021, at 1:25 p.m., a notice was served for resolution of the case, with the request being denied as untimely. Attorney Esteban Bueno Carrasco, in his capacity as authorized counsel and legal representative of Perenco Ecuador Limited, filed a cassation appeal against the ruling issued by the Tax District Court seated in the Metropolitan District of Quito, province of Pichincha, on December 4, 2017, at 12:12 p.m., as part of the challenge proceedings No. 17505-2007-24646.

FIRST: JURISDICTION: The Specialized Tax Chamber of the National Court of Justice has jurisdiction to hear and resolve the appeal in accordance with Article 184, Number 1 of the Constitution of the Republic of Ecuador; Article 185, Part Two, Numeral 1 of the General Organic Code of Judicial Conduct;

and Article 1 of the Cassation Law.

SECOND: LOWER COURT DECISION.- The Tax District Court seated in the Metropolitan District of Quito, province of Pichincha, in a decision issued on December 4, 2017, at 12:12 p.m., as part of challenge proceedings No. 17505-2007-24646, dismissed the claim filed by Mr. Laurent Combe, in his capacity as General Representative and, as such, legal representative of Perenco Ecuador Limited.

THIRD: FILING OF THE APPEAL. - On January 10, 2018, at 4:21 p.m., counsel Esteban Bueno Carrasco, in his capacity as authorized counsel and legal representative of Perenco Ecuador Limited, filed an appeal in cassation against the judgment handed down by the Tax District Court seated in the Metropolitan District of Quito, province of Pichincha, on December 4, 2017, at 12:12 p.m., as part of challenge proceedings No. 17505-2007-24646, which was duly certified by majority decision on January 17, 2018, at 3:50 p.m., pursuant to Articles 5, 6, 7, 8 and 11 of the Cassation Law, before the Judges of the Specialized Tax Chamber of the National Court of Justice, who have jurisdiction to hear and resolve this appeal.

FOURTH: ADMISSION. - Through writ of admission dated July 28, 2020, at 8:11 a.m., Dr. Marco Aurelio Tobar Solano, Member Judge of this Chamber, declared the admissibility of the cassation appeal based on the first ground of Article 3 of the Cassation Law, for failure to apply Articles 568 Part Two, 1527, 1530 and 1453 of the Civil Code; Article 26 of the Hydrocarbons Law; and Article 6 of the Regulations for the Special Bidding System and IRS [SRI] Resolution No. 437; and, for improper application of Article 3, Part Three, of the Regulations for Application of the Internal Tax Regime Law. On the third ground of Article 3 of the Cassation Law for failure to apply Articles 114, 115 and 117 of the Code of Civil Procedure; and Article 103, Numeral 7 of the Tax Code.

FIFTH: REPLY BRIEF - Attorney Jhosselyn Paredes Viteri, in her capacity as tax attorney, duly authorized by the Tax Authority, through a document dated October 5, 2020, at 5:42 p.m., replied to the filed appeal and requested its dismissal.

SIXTH - COMPOSITION OF THE COURT - By means of random drawing for challenge proceedings No. 17505-2007-24646 (1), held on December 21, 2020, at 6:10 p.m., jurisdiction was assigned to the Chamber composed of Messrs. Gustavo Durango Vela, National Judge (E), Fernando Antonio Cohn Zurita, National Judge (E); and, José Suing Nagua, National Judge, as Rapporteur. Through Resolution No. 003-2021 of January 26, 2021, the Plenary Judiciary Council ordered compliance with the writ of execution issued by the Court of Administrative Disputes in Case No. 17811-2014-0463, ratifying the continuation in office of Dr. José Suing Nagua and Gustavo Durango Vela, as National Judge and Associate Judge, respectively; through Resolution No. 008-2021 of January 28, 2021, the Plenary Judiciary Council appointed Mr. Gilda Rosana Morales Ordóñez, National Judge; the Plenary National Court of Justice, through Resolution No. 2 of February 5, 2021, appointed Mrs. Rosana Morales Ordóñez and Mr. José Suing Nagua to the Tax

Chamber; through Official Letter No. 92-P-CNJ-2021 of February 12, 2021, the President of the National Court of Justice, called upon Mr. Gustavo Durango Vela to join the Chamber, replacing Dr. Ana María Crespo, authorized through Personnel Action No. 166-UATH-2021-2021-HB of February 19, 2021.

SEVENTH: PROCEDURAL VALIDITY - No circumstance that could affect its procedural validity is observed in the case, therefore the proceeding is declared valid.

EIGHTH: CASE BEFORE THE COURT. - On October 5, 2021, at 1:25 p.m., the Court of Cassation issued writs to resolve the case at hand.

NINTH: ALLEGED ERROR. - The appellant company considers that the judgment issued by the Tax District Court, seated in the Metropolitan District of Quito, province of Pichincha, on December 4, 2017, at 12:12 p.m., incurred in the following errors: a) First ground of Article 3 of the Cassation Law, for failure to apply Articles 568 Part Two, 1527, 1530 and 1453 of the Civil Code; Article 26 of the Hydrocarbons Law; Article 6 of the Regulations to the Special Bidding System and IRS Resolution No. 437; and, for improper application of Article 3, Part Three of the Regulations of the Internal Tax Regime Law; and, b) Third ground of Article 3 of the Cassation Law, for failure to apply the legal provisions applicable to the weighing of evidence, specifically Articles 114, 115 and 117 of the Code of Civil Procedure and Article 103 Numeral 7 of the Tax Code.

TENTH: RULES ALLEGEDLY INFRINGED. - The laws that the appellant company considers to have been infringed are a) Article 568, Part Two of the Civil Code - ."... However, the members may, by so expressing, bind themselves individually, at the same time as the corporation binds itself collectively; and the liability of the members will then become joint and several, if such joint and several liability is expressly stipulated." b) Article 1527 of the Civil Code: "In general, if the liability for a divisible thing has been contracted by many persons or on behalf of many, each debtor, first of all, is bound only to its part or share in the debt; and second, each creditor shall only have the right to claim its part or share in the credit. But by virtue of convention, intent or law, the entire debt may be claimed from each debtor or by each creditor; and then the obligation is joint and several or *in solidum*. Joint and several liability must be expressly declared in all cases in which it is not established by law." c) Article 1530 of the Civil Code: "The creditor may take action against all joint and several debtors, or against any one of them at his/her discretion, and debtors cannot raise division rights as defenses against the creditor." d) Article 1453 of the Civil Code: "Obligations arise either from the actual concurrence of the wills of two or more persons, as in contracts or agreements; or from a voluntary act by the person so bound, as in the acceptance of an inheritance or legacy and in all quasi-contracts; or as a consequence of an action that has caused injury or damage to another person, such as crimes and involuntary crimes; or by provision of law, as between parents and children of a family." e) Article 26 of the Hydrocarbons Law.- "Foreign companies wishing to enter into contracts or agreements as provided for under this Law must be domiciled in this country and comply with

all requirements set forth in the laws. These foreign companies shall be subject to the courts of this country and shall expressly waive any claim through diplomatic channels. This condition and waiver shall be considered implicit in any agreement entered into with the State or with PETROECUADOR." f) Article 6 of the Regulations to the Special Bidding System – "Consortia or joint ventures: Domestic or foreign companies, state-owned or private, legally organized as of the date of the invitation to bid, may also participate in the form of consortia or joint ventures. In the event of being awarded the contract, the agreement must be signed by all parties, each one of them jointly and severally liable for all obligations under the agreement." g) Resolution of the Internal Revenue Service No. NAC-DGER2005-0437 published in Official Gazette No. 110 of September 23, 2005 - The cassation appeal refers to infringement of the aforementioned Resolution without specifying which article or transitory provision of the same has not been applied in the appealed judgment. h) Article 3, Part Three of the Regulations for Application of the Internal Tax Regime Law – "Regarding Consortia - .... In all cases, members of the consortium shall be jointly and severally liable for the taxes generated by the activity for which the consortium was created." i) Article 114 of the Code of Civil Procedure: "Each party is required to prove the facts it alleges, except those that are presumed to be in accordance with the law. Any litigant may submit evidence challenging the facts presented by their adversary." j) Article 115 of the Code of Civil Procedure: "The evidence shall be evaluated as a whole, in accordance with the rules of sound criticism, without prejudice to the formalities prescribed in the substantive law for the existence or validity of certain acts. The judge shall have the obligation to express in his or her decision, the weight of all the evidence produced." k) Article 117 of the Code of Civil Procedure: "Only duly submitted evidence, that is, evidence which has been requested, presented and practiced in accordance with the law, has any weight in the trial." l) Article 103, Numeral 7 of the Tax Code: "Substantial Duties: These are substantial duties of the tax authority: 7. To support and defend before the District Tax Court, the legality and validity of the resolutions that are under dispute and to provide this jurisdictional body with all the necessary trial elements to establish or clarify the rights of the parties;."

ELEVENTH: CONTENT OF THE FIRST AND THIRD GROUNDS OF ARTICLE 3 OF THE CASSATION LAW

The first ground of Article 3 of the Cassation Law applies when the following flaws exist: "Misapplication, non-application or erroneous interpretation of the rules of law, including binding case law precedents, in the judgment or order, which have been decisive for its holding."

The third ground of Article 3 of the Cassation Law applies when the following flaws exist: "Misapplication, non-application or erroneous interpretation of the legal provisions applicable to the weighing of evidence, provided that they have led to an erroneous application or non-application of substantive legal provisions in the judgment or order."

TWELFTH: ARGUMENTS OF THE APPELLANT REGARDING THE ALLEGED DEFECTS. -

Regarding the basis for the first grounds of Article 3 of the Cassation Law, for the flaw of non-application of Articles 568 Part Two, 1527 and 1536 of the Civil Code and for improper application of Article 3 Part Three of the Regulation for the Application of the Internal Tax Regime Law, the appellant company points out that the [Ecuadorian] IRS, in the draft assessment notice, in the assessment notices and in the challenged rulings, establishes that the taxpayer was incorporated upon the signing of the "Participation Contract for the Exploration and Exploitation of Hydrocarbons in Block 7 of the Amazon Region" (hereinafter, "Petroleum Contract") and, furthermore, establishes that the debt arising from the execution of the agreement is joint and several, therefore, regardless of the existence of such obligation, it is evident that the obligation established in the Petroleum Contract is joint and several and cannot be divided. Perenco Ecuador Limited specifies in its appeal that, in the appealed judgment, on several occasions, the joint and several liability of the companies is recognized and, in the assessment notice, in Point 3.3, Articles 1527 and 1530 of the Civil Code are cited. It points out that Part Two of Article 568 of the Civil Code has not been applied by the Lower Court, since the Civil Code states that the members of a corporation may bind themselves individually with respect to a joint and several obligation; in this case, it is obvious that Perenco, acting individually with respect to the joint and several obligation, bound itself individually with respect to the obligation set forth in the assessment notices, therefore, if the alleged Consortium exists, the "indispensable party" requirement mentioned by the First Instance Court does not apply, since the obligation, according to the IRS itself and the Petroleum Contract, is joint and several. In other words, it would be accepted that, since it is joint and several, the entire debt can be collected and any of the companies that supposedly signed the Petroleum Contract can be sued for such obligation, but these companies cannot come to defend themselves individually, which has no logic whatsoever. The appellant goes on to argue that it is important to take into account what is stated in Article 1527 (formerly 1554), which was also not applied by the Court, and which in its relevant part states: "Generally, if the liability for a divisible thing has been contracted by many persons or on behalf of many, each debtor, first of all, is obligated only to its part or share in the debt; and second, each creditor shall only have the right to claim its part or share in the credit. But by virtue of convention, intent or law, the entire debt may be claimed from each debtor or by each creditor; and then the obligation becomes joint and several or *in solidum*...." Joint and several liability was established by the contract itself, and the IRS and the Lower Court acknowledged it; therefore, any party of the alleged Consortium could bear the costs of the entire obligation and face the claim individually, and this is confirmed by Article 1536 of the Civil Code. The aforementioned article shows that Perenco, as a joint and several debtor, may raise defenses related to the nature of the obligation and, additionally, raise all personal defenses, as has occurred in the present case, therefore, it is derisory to try to apply the "indispensable party" requirement to a joint and several obligation. The appellant company adds that during the administrative proceeding, the joint and several liability criterion was accepted, and likewise, this criterion was accepted by the Lower Court, therefore, the "indispensable party" requirement cannot apply when the joint and severally liable defendants can be sued individually, and their defense can also be carried out individually. This can be seen in the IRS' assessment notices, where on page 6 of both assessment notices, the following is mentioned: "Art. 1530. - The creditor may take action against all the joint and several debtors, or against any one of them

at his/her discretion, and debtors cannot raise division rights as defenses against the creditor." If the debtor is not granted division rights, how can one seek to apply the indispensable party requirement to a joint and several debt? Joint and several liability is intended to protect the interest of the creditor, in this case the IRS, against the plurality of responsible parties for the tax debt, without this limiting the individual defense of each debtor. Indeed, what is intended through joint and several liability is precisely to protect the creditor, it is intended to allow the injured party to sue individually any of the responsible parties to claim the total amount owed, without the latter being able to claim the failure to meet the "indispensable party" requirement, or that [the injured party] may sue only one or all of the debtors; therefore, to try to apply the "indispensable party" requirement, which seeks to protect the creditor, is absurd, when one of the alleged debtors, in addition to qualify as an operator, defends itself individually against a joint and several debt. This is all the more true if the obligation was determined based on Perenco's and the other companies' tax returns, since the alleged Consortium did not file taxes, as it does not even have an Individual Taxpayer Number [RUC]. Finally, the appellant company states that in Point 4.4. of the appealed judgment, the Lower Court, citing Article 3 of the Regulation for Application of the Internal Tax Regime Law, revealed that the claim was filed by Perenco individually because a joint and several obligations was claimed against it, without taking into account that this is allowed in accordance with Article 1536 (SIC) of the Tax Code. The appellant company thus concluded that if Article 3 of the aforementioned Regulation is applied, the joint and several liability criterions should be applied; however, this article is applied to reject the claim. This direct violation is evidenced by the fact that the aforementioned provisions have not even been cited, much less analyzed or applied, with the exception of Article 3 of the Regulations, which are decisive as to the ruling, given that, if they had been properly analyzed or applied, it would have been understood that joint and several obligations are not divisible and that they can be defended in court by any of the joint debtors, as occurred in this case. It is so evident that the violation affects the decision of the Court that if the concept of indispensable party were eliminated from the judgment, the merits of the case would have to be examined; however, in this case, none of the arguments on the merits have been examined since, according to the Court, no further consideration is necessary in view of the impossibility of issuing a judgment on the merits.

Regarding the reasoning as to the third ground of Article 3 of the Cassation Law, for failure to apply the legal provisions applicable to the weighing of evidence, specifically the failure to apply Articles 114, 115 and 117 of the Code of Civil Procedure and Article 103, Numeral 7 of the Tax Code, Perenco Ecuador Limited argues in its appeal that the Lower Court upholds the existence of the alleged Consortium by citing several clauses of the Petroleum Contract, without taking into account or analyzing other clauses that show that forming a consortium was optional, but more importantly, that throughout the entire decision, it does not discuss or analyze any of the evidence presented by Perenco to show the non-existence of the Consortium. The appealed judgment mentions that the Consortium "arises as a result of the service provision agreement for the exploration and exploitation of hydrocarbons in Block 7"; in other words, the only evidence that is analyzed, and partially, to support the existence of the supposed Consortium, is the Petroleum Contract, without analyzing any other evidence and without fully analyzing the aforementioned agreement. The appellant company details in its appeal all the evidence it purports to have submitted in a timely manner within the proceeding, which,

as it explains, demonstrates that despite the existence of a joint and several obligation, the alleged consortium never existed. Subsequently, after listing the evidence submitted in the proceedings, Perenco Ecuador Limited asks: Has any of this evidence been reviewed, analyzed or even mentioned by the Lower Court? Is the contract sufficient to prove the existence of the Consortium? It points out that Article 115 of the Code of Civil Procedure was not applied by the Lower Court in its decision, that is to say, it did not list, review, cite or even mention the evidence submitted, or weigh all the evidence presented by Perenco, nor did it comply with its duty (not power) to assess the evidence as a whole; it simply mentioned that Perenco has not presented documentation proving that the alleged Consortium exists. Likewise, it refers to Article 117 of the Code of Civil Procedure and mentions that in this case the evidence presented, in spite of having been submitted to the proceeding in legal and due form, was not taken into consideration when resolving the case. Consequently, Article 117 of the Code of Civil Procedure, which orders judges to consider evidence that has been submitted to the proceeding in a timely and due manner, was also disregarded. The failure to apply the aforementioned rules for weighing evidence generates a clear legal error, since the judgment dismisses all arguments on the grounds that the Consortium exists. The appellant company points out that Perenco's evidence brief is comprised of XVIII paragraphs, and that certain paragraphs are a direct copy of documents that were attached to or form part of the administrative case file without at any time making reference to the documents that were copied, attached or added to the case file; therefore, it asks what weighing of the evidence was performed in the appealed judgment. It also refers to Article 114 of the Code of Civil Procedure and argues that each party is required to prove the facts it alleges, except those that are generally accepted by law. In this case, the IRS did not provide any document that substantiates the existence of the alleged Consortium; however, under an erroneous concept of the burden of proof, it seeks to argue the existence of an entity based on the contract when there is other evidence to the contrary and, moreover, the contract itself demonstrates that the creation of a consortium was optional; in this respect it also indicates that the provisions of Article 103, Numeral 7 of the Tax Code must be taken into account. In this case no such thing has occurred; however, all the arguments presented by the IRS were accepted as true, without substantiating, among other matters, the following: a) That the alleged Consortium existed during the 2002 fiscal year, and that it had an RUC, accountant or contract to prove it; b) That Perenco was aware of the creation of the alleged Consortium; c) That the parties willingly created the alleged Consortium as set forth in Clauses 16.4 and 16.5 of the Petroleum contract; d) That the alleged Consortium is registered in the taxpayers' registry or cadastre; e) The reason why the challenged instrument was issued in the name of the Contractor and not in the name of the alleged Consortium when the Contract itself distinguishes both parties. Moreover, the judges, through the various lawsuits they have resolved, know that the IRS not only created a taxable subject related to the Petroleum Contracts associated with Block 7 and Block 21, but also created as many subjects as it wanted or needed, without any of them having a RUC or having filed statements prior to 2006. Subsequently, the appellant company provides a detailed list of all subjects created as of 2002 by the IRS, which, according to the appellant, were created through the illegal application of its assessment authority when issuing tax assessment notices. It points out that not one, but seven different taxpayers were created, which has no justification. Therefore, without considering the companies that supposedly make up the alleged Consortium, the IRS registry should include all these

taxpayers against which tax assessment proceedings were initiated, all of this in spite that evidence has been provided in a timely manner in each proceeding that proves that the alleged Consortium never existed. The appellant concludes by pointing out that the evidence submitted by Perenco was not analyzed, especially the evidence related to the non-existence of the alleged Consortium; in other words, no evidence submitted by any of the parties has been adequately weighed, which is illegal and in direct violation to the aforementioned rules of evidence weighing.

Finally, regarding the grounds for the failure to apply Article 1453 of the Civil Code; Article 26 of the Hydrocarbons Law; Article 6 of the Regulations for the Special Bidding System; and IRS Resolution No. 437, the appellant company points out that the IRS issues the assessment notice with respect to the taxpayer "contractor that signed the Amended Participation Contract with the Ecuadorian Government for the exploration and exploitation of hydrocarbons in Block 7 of the Amazon Region, which includes the agreement for the unified exploitation of the Coca-Payamino field." It points out that in spite of the allegation made in the lawsuit as to the taxpayer's non-existence, the Honorable Court accepts the existence of the alleged Consortium without taking into account any of the evidence provided in the proceeding, especially after it was demonstrated that the "alleged Consortium," in relation to which the IRS issued the assessment notice, did not exist during the 2002 fiscal year. Perenco points out that the IRS created this entity because its assessment authority had expired, and it needed a means to initiate an assessment process against Perenco and the other companies that signed the Petroleum Contract. Indeed, the Petroleum Contract was entered into between PETROECUADOR and several companies, all with their own legal capacity, independently of one another, which together, for purposes of the Petroleum Contract, were referred to as the "Contractor." This "Contractor" never existed as a legal entity independent of the parties, or as a corporation for tax purposes; on the contrary, the term "Contractor" was used to identify a group of companies that jointly and severally signed the Petroleum Contract with PETROECUADOR. In order to prove the existence of the alleged Consortium, the IRS should have presented the agreement or intent of the parties or the legal provision creating such entity, which never happened. Furthermore, according to Article 1453 of the Civil Code, there are two ways for a consortium or joint venture to come into existence: a) By the will of its members; or b) By legal mandate. Article 1453 of the Civil Code, in its relevant part, provides: "Art. 1453 - Obligations arise either from the actual concurrence of the wills of two or more persons, as in contracts or agreements (...); or by provision of the law, as between parents and children." Then, the appellant company analyzes each way [in which a consortium can be formed]: a. Regarding the will of the parties, it points out that it is clear from the case record that in 2002, the companies that signed the Petroleum Contract never expressed their will to form a consortium or joint venture and, what is more, the IRS, from the assessment stage to date, has not demonstrated the existence of an agreement between the alleged partners of the alleged consortium. Moreover, no document has been presented that demonstrates the will or express obligation for the companies to form a consortium or joint venture, and this is due to the fact that the participation contract itself penalized, with termination, the association or formation of a consortium without the prior authorization of the corresponding ministry. Clause 16.5 of the Petroleum Contract establishes that if the contractor deems it convenient to form consortia or joint ventures, it may do so with prior notice from PETROECUADOR and authorization from the relevant Ministry, and

what is more, Clause 16.5 of the aforementioned Contract states verbatim: "The formation of such consortia or joint ventures, or the Contractor's withdrawal from them, without authorization from the relevant Ministry, shall constitute grounds for the Contract to be declared expired." Neither the administrative case file nor the challenge case file contains an agreement between the parties to act as a consortium nor do they have the authorization from the relevant Ministry referred to in the aforementioned clauses; therefore, the existence of the Consortium in 2002 could not be established. The Petroleum Contract was signed by the alleged partners of the alleged Consortium individually and independently and this was proven and recognized in the appealed judgment; furthermore, as mentioned, the contractors could not form joint ventures or consortia without the authorization of the relevant Ministry, therefore, it has been shown that there was never a will of the parties to appear jointly, accepting limited liability. Additionally, each company that held rights and obligations in the "Participation Contract" had legal status in Ecuador during the 2002 fiscal year. All companies were domiciled in Ecuador as expressly provided for in Article 26 of the Hydrocarbons Law. If the will of the legislators had been to force companies to form "Consortia," as a prerequisite for the execution of contracts with the Government for the exploration and exploitation of hydrocarbons, it would have been so provided. However, when the Petroleum Contract was signed, the companies that signed it had the clear option of doing so as individual companies, as has occurred in this case. On the other hand, it is clear from Article 6 of the Regulations for the Special Bidding System that two options, two alternatives were granted to the companies that were to sign a participation contract: i) to appear individually; or, ii) to appear through a consortium or joint venture. In this case, the first alternative was chosen. This is why the law, the Petroleum Contract and the IRS itself recognize a joint and several obligation held by the companies, given that if they did not form a joint venture, the Ecuadorian Government, through the IRS, could turn to any of the companies to collect the outstanding tax debt. Perenco points out that the alleged partner companies of the alleged consortium, upon complying with the orders of IRS Resolution No. 437, on December 30, 2005, and with prior authorization from the Ministry of Energy and Mines, signed the agreement for the creation of the Block 7 and Block 21 Consortium; therefore, in fiscal year 2002, the alleged Consortium never existed. Given that the "Alleged Consortium" to which the assessment notice was issued never existed, it is therefore evident that Perenco Ecuador Limited could have never represented a non-existent entity and, therefore, it makes no logical or legal sense whatsoever for the IRS to demand payment of an alleged tax obligation from a non-existent entity, nor to try to impute to [Perenco Ecuador Limited] such alleged obligation of that non-existent entity. The appellant goes on to analyze the second way in which a consortium can come into existence: b. by legal mandate, and argues that the law does not establish an express or mandatory mandate to form consortia when entering into petroleum contracts, but rather the law, as mentioned above, provides the option for companies to choose whether or not to form consortia, all subject to authorization of the corresponding Ministry. Article 6 of the Regulations for the Special Bidding System states that companies entering into petroleum contracts may choose to form consortia or joint ventures or act individually. Only after an express provision of the Internal Revenue Service, as contained in Resolution No. 437 (Official Gazette 110 of September 23, 2005) and after the Ministry of Energy and Mines authorized it (through Ministerial Agreement No. 049) did the companies that held rights and obligations under the participation contract

form a Consortium, that is, a new company for tax purposes. Once the Block 7 and Block 21 Consortium was formed in 2006, the corresponding RUC was obtained. It is worth mentioning that if the alleged Consortium had existed in 2002, the IRS should have continued the assessments pertaining to the alleged taxpayer; however, since 2006 the IRS presented assessments to the Block 7 and Block 21 Consortium, which was formed in accordance with the referred IRS Resolution No. 437. Thus, there is no basis that supports the argument that the alleged Consortium already existed because the companies that signed the contract preferred to bind themselves individually to the Government. The appellant company argues that this is the analysis that the rapporteur Judge should have made instead of simply considering that the alleged Consortium exists in view of a simple reading of the clauses that conveniently support the IRS's thesis and that, therefore, there is an indispensable party requirement regarding a debt of joint and several nature. It was demonstrated that Article 1453 of the Civil Code was never applied and that there was no intent by Perenco to form a consortium nor any rule that compelled it to do so. Therefore, the assessment is null and void, as it was issued against a taxpayer that simply did not exist in fiscal year 2002, since the creation of a consortium without the authorization of the Ministry of Energy and Mines would have meant the contract's expiration. It is also set forth that the appealed judgment did not include a basic analysis of Article 26 of the Hydrocarbons Law, which allows for the individual domiciliation of each company; furthermore, a simple reading of the judgment also shows that Article 6 of the Regulations for the Special Bidding System, which optionally allows the participation of the companies individually or as a consortium, was never taken into account; these rules are part of a system that protects the companies' option to act either as a consortium or individually, without disregarding the Ecuadorian Government's protections by establishing the joint and several liability for the tax debt. Finally, Perenco states that Point 4.3 of the appealed judgment mentions that the IRS, through Resolution 437, ordered the creation of the petroleum consortia as of December 30, 2005, without making any other analysis and without considering that even this resolution required authorization of the Ministry of Energy and Mines [as a pre-requisite] to form a consortium; all these arguments, plus the evidence submitted, have not been duly weighed or analyzed. It must be taken into account that this flaw, beyond the effect evidenced in the resolution, also seeks to review the legality of the weighing of the evidence and, in this case, it is clear that by not applying any of the aforementioned articles and considering that no evidence has been submitted, there are already sufficient grounds to substantiate the mistakes committed, given that the Court points out that no evidence has been submitted to prove that the consortium does not exist.

THIRTEENTH: ANALYSIS OF THE ALLEGED FLAW - This Specialized Tax Chamber of the National Court of Justice, in order to resolve the legal problems arising from the challenge to the Lower Court's decision, based on the first and third grounds of Article 3 of the Cassation Law, admitted by the Associate Judge, considers:

13.1 First ground.- i. The lack of application "occurs when the adjudicating authority denies in its judgment the existence of a legal provision, ignoring it with respect to the case under review. It is a legal error, and it is defiance and ignorance of the law. It is an error of existence of the legal provision because it was excluded in the judgment." ii. The appellant questions the Lower Court's decision for having failed to apply Articles 568, Part Two; 1453, 1527 and 1530 of the Civil Code; 26 of the Hydrocarbons Law; 6 of the Special Bidding

Regulations; and IRS Resolution No. 4377; as well as the improper application of Article 3, Part Three of the Regulations for the Internal Tax Regime Law. The questions arise as to the existence or not of the consortium, which would have caused a lack of legal standing, due to the non-appearance of all members of the consortium to question the tax assessment actions, this being the procedural aspect of the indispensable party requirement; iii. The contested judgment sets forth that since the assessment was made against a plurality of parties that formed an independent economic entity, a taxpayer subject to income tax, the plaintiff company's intervention on its own behalf is insufficient, from a procedural point of view, to challenge an action that affects third parties that have not appeared to assert their rights, and therefore they conclude that the concept known in doctrine as a lack of standing is present in the case due to the failure to meet the indispensable party requirement, without reaching a decision as to the merits of the case, iv. After analyzing the judgment, section four develops the arguments supporting its decision, as follows: a) That the company appeared in the present case on its own behalf; b) That the contract was entered into by a plurality of subjects, which form an economic unit with its own tax obligations, which originate from the contract for the provision of oil services in Block 7; c) That the plaintiff denies the existence of the consortium, which was formed after the period under review; d) That Article 94 of the Tax Regime Law regulates the term corporation, including entities without "legal personality," as well as a consortium's or joint venture's obligation to pay income tax, pursuant to Article 3 of the Regulations of the Internal Tax Regime Law; e) That both the contract and current legislation define the contractor as a subject different from the companies that comprise it, with its own tax obligations arising from the contract. It concludes that the action of PERENCO ECUADOR LIMITED on its own behalf is insufficient, from a procedural point of view, to challenge an act that affects third parties that have not appeared to assert their rights, establishing what is known in doctrine as lack of standing in the case due to the failure to meet the indispensable party requirement, grounds upon which the claim is dismissed, without issuing a decision on the merits of the case, as expressly noted; v. To resolve the challenge, it is necessary to verify what kind of legal figure the so-called "CONTRACTOR" embodies for tax purposes: a) As set forth in the judgment, the contractor, originally made up of KERR McGEE ECUADOR ENERGY CORPORATION, as operator of Block 7, and the companies SANTA FE MINERALES DEL ECUADOR S.A, SOCIEDAD INTERNACIONAL PETROLERA S.A, and COMPAÑÍA LATINOAMERICANA PETROLERA S.A. (CLAPSA), signed the "Amended Service Provision Contract to the Participation Contract for the Exploration and Exploitation of Hydrocarbons in Block 7 (Participation Agreement);" b) The plaintiff company PERENCO ECUADOR LIMITED assumes the status of operator of Block 7 as a result of the assignment of the rights and obligations made in its favor by KERR McGEE ECUADOR ENERGY CORPORATION, as of September 4, 2002, the date of the assignment agreement; c) The tax assessment exercise that concluded with Assessment Notice No. 1720060100224 of November 29, 2006, which is the subject-matter of the challenge proceedings, for the tax year 2002, is performed by the Tax Authority against the "CONTRACTOR THAT SIGNED WITH THE ECUADORIAN STATE THE AMENDED SERVICE PROVISION CONTRACT TO THE PARTICIPATION CONTRACT FOR THE EXPLORATION AND EXPLOITATION OF HYDROCARBONS IN BLOCK 7 OF THE AMAZON REGION, WHICH INCLUDES THE UNIFIED

EXPLOITATION AGREEMENT FOR THE COCA- PAYAMINO FIELD"; d) The "CONTRACTOR," as stated in the contract, (pp. 437 to 498 of the case file) is a group of companies that are fully identified, where the plaintiff in the case has the role of operator of Block 7, as a result of the assignment of rights in its favor; consequently, without the existence of any formed consortium, as of the given fiscal year, it is unquestionable that the "CONTRACTOR" is a company, in the general meaning of the term, different from those which, as a consequence of the signed contract, in fact assume a joint and several liability, since the contract does not distinguish or specify individual obligations for the signing companies, but rather for the "CONTRACTOR" as an autonomous subject, and as such, an income taxpayer, in accordance with the provisions of Article 4 of the Internal Tax Regime Law, in force as of the date of the fiscal year in question; v. The plaintiff company, although appearing in its individual capacity, is undoubtedly questioning the assessment the Tax Administration issued against the "CONTRACTOR," for which it is the operator of Block 7, which is why it is necessary to verify whether the concept of "indispensable party," used by the Lower Court in the challenged judgment, is applicable to the case; vi. The lack of right of the plaintiff or lack of legal standing is not a prerequisite for the validity of the process, but it is a prerequisite for the validity of a judgment on the merits; regarding legal standing, the Civil Chamber of the National Court or formerly Supreme Court has stated that: "It is necessary to distinguish the lack of standing from the lack of legitimate adversaries, or lack of standing in the case (*legitimatio ad causam*), which consists in that the plaintiff must be the person who claims to be the holder of the substantial right in dispute, and the defendant the one called by law to contest or oppose the claim, since it is against them that the law allows the judge to rule, in a judgment on the merits, whether or not the substantial legal relationship that is the subject-matter of the claim exists, a judgment that binds them and produces substantive *res judicata*" (Resolution of the First Civil and Commerce Chamber No. 5 16-99 issued in trial No. 159-98); "It determines not only who must act in the case with the right to obtain a judgment on the merits, but also who must be present for such a decision on the merits to be possible. We speak of necessary adversaries, to show that in certain proceedings it is indispensable that certain persons participate (as indispensable parties), either as claimants or respondents, so that a decision about the lawsuit requests is possible" (underline added by the Chamber), Decision of the First Civil and Commerce Chamber No. 372-99 handed down in Case No. 820-94, as published in the Official Gazette No. 257 of August 18, 1999; "When, in a contract, one of the parties is composed of several persons, the subject and object relationship must be established between each of them and the object that becomes the substantial relationship, the non-participation of one person results in a lack of standing *ad causam*; and there are cases in which the presence in the proceeding of all the subjects linked to a contract (substantial relationship) becomes indispensable so that the procedural legal relationship is complete and it is possible to decide on its merits; if the subjects are two or more, but form a single subject, the indispensable party requirement applies and their appearance is indispensable," (underline added by the Chamber) Resolution of the First Civil and Mercantile Chamber No. 118-99 in Case 100-96, as published in the Official Gazette No. 160 of March 31, 1999 (references taken from the article *Capacidades y legitimaciones en el proceso civil* [Jurisdiction and Standing in Civil Proceedings], by Lorena Cascante Redín); as is clear from the jurisprudential references, standing in the case is applicable in certain circumstances, not in all cases, as a single rule; vi. In tax matters, the taxpayer is the individual or legal entity

required to comply with the tax obligation, either as taxpayer or as liable party; as well as the entities that, lacking legal personality, constitute an economic unit or an independent patrimony (Article 24 of the Tax Code); in the present case, undoubtedly, since it constitutes an economic unit, the "CONTRACTOR" is the taxpayer subject to the obligation, independently of its members; vii. Now, as stated above, the plaintiff in this case, PERENCO LIMITED, acts as operator of Block 7, the object of the contract, which is not in dispute, so it is perfectly valid for it to act on behalf of the "contractor," since, being a *de facto* company, without legal status, it jointly and severally binds each of its members, as provided in the last subparagraph of Article 568 of the Civil Code, applicable to the case. Joint and several liability affords the other members of the company the right to contribution, if applicable; viii. It cannot be sought, by claiming lack of standing in the case, to avoid a ruling on the merits in dispute, which are perfectly challengeable, according to the provisions of the Constitution of the Republic, as well as the Internal Tax Regime Law and the Tax Code; not giving way to a review and decision on the merits would mean leaving the plaintiff defenseless, and a gross violation to rights protected by the tax proceedings, pursuant to Article 300 of the [General Code of Procedure]. By accepting the filed appeal, absent a decision on the merits, the case file must be returned to the Lower Court so that it may rule on the challenges to the charges imposed by the Tax Administration.

13.2. With respect to the flaws based on the third ground of Article 3 of the Cassation Law for failure to apply the legal provisions applicable to the weighing of evidence, specifically the failure to apply Articles 114, 115 and 117 of the Code of Civil Procedure and Article 103, Numeral 7 of the Tax Code, its analysis is not required given what was resolved in the prior section.

FOURTEENTH - DECISION.- Given the foregoing considerations, this Specialized Tax Chamber of the National Court of Justice, ADMINISTERING JUSTICE, IN THE NAME OF THE SOVEREIGN PEOPLE OF ECUADOR, AND BY AUTHORITY OF THE CONSTITUTION AND LAWS OF THE REPUBLIC, resolves to OVERTURN the ruling issued by the Tax District Court seated in the Metropolitan District of Quito, province of Pichincha, on December 4, 2017, 12:12 p.m., as part of challenge proceedings No. 17505-2007-24646. Absent a decision on the merits of the case, it is ordered that the case file be returned to the Lower Court, so that the same Court, or another one, keeping the rapporteur Judge, may issue a judgment on the disputed issues as soon as possible.

To be Notified, Published and Returned.-

f).- JOSE DIONICIO SUING NAGUA, NATIONAL JUDGE; MORALES ORDÓÑEZ GILDA ROSANA, NATIONAL JUDGE; GUSTAVO ADOLFO DURANGO VELA, NATIONAL JUDGE (E)

Which I am communicating to you for applicable legal purposes.

LIGIA MARISOL MEDIAVILLA
**SECRETARY RAPPORTEUR**





178280966-NP

# REPÚBLICA DEL ECUADOR
## FUNCIÓN JUDICIAL
## www.funcionjudicial.gob.ec

Juicio No: 17505200724646, CORTE NACIONAL, número de ingreso 1

Casillero Judicial No: 4452
Casillero Judicial Electrónico No: 1714766738
efbueno@iusnovaabogados.com
cmoncayo@iusnovaabogados.com
mburbanodelara@iusnovaabogados.com
dfreire@sri.gob.ec
ebueno@abocacia.com
mulloa@abocacia.com
cmoncayo@abocacia.com
malban@abocacia.com
mespinosa@abocacia.com

Fecha: 08 de noviembre de 2021
A: CHRISTOPHE DELEPINE, APODERADO GENERAL Y REPRESENTANTE LEGAL DE LA
COMPAÑÍA PERENCO ECUADOR LIMITED
Dr/Ab.: ESTEBAN FRANCISCO BUENO CARRASCO

**SALA ESPECIALIZADA DE LO CONTENCIOSO TRIBUTARIO DE LA CORTE
NACIONAL DE JUSTICIA**

En el Juicio No. 17505200724646, hay lo siguiente:

Quito, lunes 8 de noviembre del 2021, las 10h42, VISTOS: Agréguese al proceso el escrito presentado
por el Procurador Judicial de la empresa actora el 15 de octubre de 2021, a las doce horas y veinte
minutos; atendiendo el mismo, en razón de que con fecha 5 de octubre de 2021, las 13h25, se notificó
con autos para resolver la causa, se niega el pedido por extemporáneo. El abogado Esteban Bueno
Carrasco en calidad de abogado autorizado y procurador judicial de la compañía Perenco Ecuador
Limited, interpone recurso de casación en contra del fallo dictado por el Tribunal Distrital de lo
Contencioso Tributario con sede en el Distrito Metropolitano de Quito, provincia de Pichincha, el 4 de
diciembre de 2017, las 12h12, dentro del juicio de impugnación No. 17505-2007-24646.

PRIMERO: COMPETENCIA.- La Sala Especializada de lo Contencioso Tributario de la Corte
Nacional de Justicia es competente para conocer y resolver el recurso de conformidad con lo dispuesto
en el artículo 184 numeral 1 de la Constitución de la República del Ecuador; artículos 185 segunda

parte numeral 1 del Código Orgánico de la Función Judicial; y, artículo 1 de la Ley de Casación.

SEGUNDO: DECISIÓN DE INSTANCIA.- El Tribunal Distrital de lo Contencioso Tributario con sede en el Distrito Metropolitano de Quito, provincia de Pichincha, en fallo expedido el 4 de diciembre de 2017, las 12h12, dentro del juicio de impugnación No. 17505-2007-24646, desechó la demanda presentada por el señor Laurent Combe en calidad de Apoderado General y como tal, representante legal de la compañía Perenco Ecuador Limited.

TERCERO: PRESENTACIÓN DEL RECURSO.- Con fecha 10 de enero de 2018, las 16h21, el abogado Esteban Bueno Carrasco en calidad de abogado autorizado y procurador judicial de la compañía Perenco Ecuador Limited, interpuso recurso de casación en contra del fallo dictado por el Tribunal Distrital de lo Contencioso Tributario con sede en el Distrito Metropolitano de Quito, provincia de Pichincha, el 4 de diciembre de 2017, las 12h12, dentro del juicio de impugnación No. 17505-2007-24646, mismo que fue calificado en auto de mayoría de 17 de enero de 2018, las 15h50, en los términos de los artículos 5, 6, 7, 8 y 11 de la Ley de Casación, para ante los Jueces de la Sala Especializada de lo Contencioso Tributario de la Corte Nacional de Justicia, competentes para conocer y resolver este recurso.

CUARTO: ADMISIÓN.- Mediante auto de admisión de 28 de julio de 2020, las 8h11, el doctor Marco Aurelio Tobar Solano, Conjuez de esta Sala, declaró la admisibilidad del recurso de casación propuesto por la causal primera del artículo 3 de la Ley de Casación por falta de aplicación de los artículos 568 segundo inciso, 1527, 1530 y 1453 del Código Civil, artículo 26 de la Ley de Hidrocarburos y artículo 6 del Reglamento al Sistema Especial de Licitación y la Resolución del SRI No. 437; y, por indebida aplicación del artículo 3 tercer inciso del Reglamento para la aplicación de la Ley de Régimen Tributario Interno. Por la causal tercera del artículo 3 de la Ley de Casación por el vicio de falta de aplicación de los artículos 114, 115 y 117 del Código de Procedimiento Civil y artículo 103 numeral 7 del Código Tributario.

QUINTO: CONTESTACIÓN AL RECURSO.- La abogada Jhosselyn Paredes Viteri en su calidad procuradora fiscal, debidamente autorizada por la Autoridad Tributaria, mediante escrito de 5 de octubre de 2020, las 17h42, da contestación al recurso interpuesto y solicita desechar el mismo.

SEXTO.- INTEGRACIÓN DEL TRIBUNAL JUZGADOR.- Mediante sorteo de la causa No. 17505-2007-24646 (1), realizado el 21 de diciembre de 2020, las 18h10, se radicó la competencia en la Sala integrada por los doctores Gustavo Durango Vela, Juez Nacional (E), Fernando Antonio Cohn Zurita, Juez Nacional (E); y, José Suing Nagua, Juez Nacional, en calidad de Ponente. Mediante Resolución No. 003-2021 de 26 de enero de 2021, el Pleno del Consejo de la Judicatura dispuso dar cumplimiento al mandamiento de ejecución expedido por el Tribunal de lo Contencioso Administrativo en la causa No. 17811-2014-0463, ratificando la continuación en el ejercicio de funciones de los doctores José Suing Nagua y Gustavo Durango Vela, de Juez y Conjuez Nacionales, respectivamente; con Resolución No. 008-2021 de 28 de enero de 2021, el Pleno del Consejo de la Judicatura designó a la doctora Gilda Rosana Morales Ordóñez, Jueza Nacional; el Pleno de la Corte Nacional de Justicia, mediante Resolución No. 2 de 5 de febrero de 2021, integró la Sala de lo Contencioso Tributario con

los doctores Rosana Morales Ordóñez y José Suing Nagua; mediante Oficio No. 92-P-CNJ-2021 de 12 de febrero de 2021, el Presidente de la Corte Nacional de Justicia, llamó a integrar la Sala al doctor Gustavo Durango Vela, en reemplazo de la doctora Ana María Crespo, avalado con la acción de personal No. 166-UATH-2021-2021-HB de 19 de febrero del 2021.

SÉPTIMO: VALIDEZ PROCESAL.- No se observa del proceso ninguna circunstancia que pueda afectar la validez procesal, por lo que se declara el proceso válido.

OCTAVO: AUTOS PARA RESOLVER.- Con fecha 5 de octubre de 2021, las 13h25, el Tribunal de Casación emitió autos para resolver la presente causa.

NOVENO: ERROR ALEGADO.- La compañía recurrente considera que el fallo emitido por el Tribunal Distrital de lo Contencioso Tributario con sede en el Distrito Metropolitano de Quito, provincia de Pichincha, el 4 de diciembre de 2017, las 12h12, incurre en los siguientes errores: a) Causal primera del artículo 3 de la Ley de Casación por falta de aplicación de los artículos 568 segundo inciso, 1527, 1530 y 1453 del Código Civil, artículo 26 de la Ley de Hidrocarburos, artículo 6 del Reglamento al Sistema Especial de Licitación y la Resolución del SRI No. 437; y, por aplicación indebida del artículo 3 tercer inciso del Reglamento a la Ley de Régimen Tributario Interno; y, b) Causal tercera del artículo 3 de la Ley de Casación por el vicio de falta de aplicación de los preceptos jurídicos aplicables a la valoración de la prueba, concretamente los artículos 114, 115 y 117 del Código de Procedimiento Civil y artículo 103 numeral 7 del Código Tributario.

DÉCIMO: NORMAS SEÑALADAS COMO INFRINGIDAS.- Las normas que la compañía recurrente considera infringidas son: a) Artículo 568 segundo inciso del Código Civil.-"… Sin embargo, los miembros pueden, expresándolo, obligarse en particular, al mismo tiempo que la corporación se obliga colectivamente; y la responsabilidad de los miembros será entonces solidaria, si se estipula expresamente la solidaridad.". b) Artículo 1527 del Código Civil.-"En general, cuando se ha contraído por muchas personas o para con muchas la obligación de una cosa divisible, cada uno de los deudores, en el primer caso, está obligado solamente a su parte o cuota en la deuda; y cada uno de los acreedores, en el segundo, sólo tiene derecho para demandar su parte o cuota en el crédito. Pero en virtud de la convención, del testamento o de la ley, puede exigirse a cada uno de los deudores o por cada uno de los acreedores el total de la deuda; y entonces la obligación es solidaria o in sólidum. La solidaridad debe ser expresamente declarada en todos los casos en que no la establece la ley.". c) Artículo 1530 del Código Civil.- "El acreedor podrá dirigirse contra todos los deudores solidarios juntamente, o contra cualquiera de ellos a su arbitrio, sin que por éste pueda oponérsele el beneficio de división.". d) Artículo 1453 del Código Civil.-"Las obligaciones nacen, ya del concurso real de las voluntades de dos o más personas, como en los contratos o convenciones; ya de un hecho voluntario de la persona que se obliga, como en la aceptación de una herencia o legado y en todos los cuasicontratos; ya a consecuencia de un hecho que ha inferido injuria o daño a otra persona, como en los delitos y cuasidelitos; ya por disposición de la ley, como entre los padres y los hijos de familia.". e) Artículo 26 de la Ley de Hidrocarburos.- "Las empresas extranjeras que deseen celebrar contratos contemplados en esta Ley deberán domiciliarse en el País y cumplir con todos los requisitos previstos

en las leyes. Estas empresas extranjeras se sujetarán a los tribunales del País y renunciarán expresamente a toda reclamación por vía diplomática. Aquella sujeción y esta renuncia se considerarán implícitas en todo contrato celebrado con el Estado o con PETROECUADOR.". f) Artículo 6 del Reglamento al Sistema Especial de Licitación.-"Consorcios o asociaciones.- Las empresas nacionales o extranjeras, estatales o privadas, legalmente constituidas a la fecha de la convocatoria, también podrán participar bajo la figura de consorcios o asociaciones. En caso de resultar adjudicatarias, el contrato deberá ser firmado por todas las partes, debiendo responder cada una de ellas en forma solidaria e indivisible por el conjunto de las obligaciones del contrato.". g) Resolución del Servicio de Rentas Internas No. NAC-DGER2005-0437 publicada en el Registro Oficial No. 110 de 23 de septiembre de 2005.- En el recurso de casación se refiere la infracción de la Resolución indicada sin precisar cuál es el artículo o disposición transitoria de la misma que no ha sido aplicado/a en la sentencia recurrida. h) Artículo 3 tercer inciso del Reglamento para la aplicación de la Ley de Régimen Tributario Interno.- "De los consorcios.-... En todos los casos, los miembros del consorcio serán solidariamente responsables, por los tributos que genere la actividad para la cual se constituyó el consorcio.". i) Artículo 114 del Código de Procedimiento Civil.- "Cada parte está obligada a probar los hechos que alega, excepto los que se presumen conforme a la ley. Cualquiera de los litigantes puede rendir pruebas contra los hechos propuestos por su adversario.". j) Artículo 115 del Código de Procedimiento Civil.- "La prueba deberá ser apreciada en conjunto, de acuerdo con las reglas de la sana crítica, sin perjuicio de las solemnidades prescritas en la ley sustantiva para la existencia o validez de ciertos actos. El juez tendrá obligación de expresar en su resolución la valoración de todas las pruebas producidas.". k) Artículo 117 del Código de Procedimiento Civil.- "Sólo la prueba debidamente actuada, esto es aquella que se ha pedido, presentado y practicado de acuerdo con la ley, hace fe en juicio.". l) Artículo 103 numeral 7 del Código Tributario.- "Deberes sustanciales.- Son deberes sustanciales de la administración tributaria: 7. Fundamentar y defender ante el Tribunal Distrital de lo Fiscal la legalidad y validez de las resoluciones que se controviertan y aportar a este órgano jurisdiccional todos los elementos de juicio necesarios para establecer o esclarecer el derecho de las partes;".

DÉCIMO PRIMERO: CONTENIDO DE LAS CAUSALES PRIMERA Y TERCERA DEL ARTÍCULO 3 DE LA LEY DE CASACIÓN.-

La causal primera del artículo 3 de la Ley de Casación se configura por los vicios de: "Aplicación indebida, falta de aplicación o errónea interpretación de normas de derecho, incluyendo los precedentes jurisprudenciales obligatorios, en la sentencia o auto, que hayan sido determinantes de su parte dispositiva.".

La causal tercera del artículo 3 de la Ley de Casación se configura por los vicios de: "Aplicación indebida, falta de aplicación o errónea interpretación de los preceptos jurídicos aplicables a la valoración de la prueba, siempre que hayan conducido a una equivocada aplicación o a la no aplicación de normas de derecho sustantivo en la sentencia o auto.".

DÉCIMO SEGUNDO: ARGUMENTOS DEL RECURRENTE POR LOS VICIOS ACUSADOS.-

En lo que se refiere al fundamento de la causal primera del artículo 3 de la Ley de Casación, por el vicio de falta de aplicación de los artículos 568 segundo inciso, 1527 y 1536 del Código Civil y por aplicación indebida del artículo 3 tercer inciso del Reglamento para la aplicación de la Ley de Régimen Tributario Interno, la compañía recurrente señala que el SRI en el acta borrador de determinación, en las actas de determinación y en las resoluciones impugnadas, establece que el sujeto pasivo se constituyó con la firma del "Contrato de participación para la exploración y explotación de hidrocarburos en el Bloque 7 de la Región Amazónica" (en adelante, contrato petrolero) y, además, establece que la deuda que nace de la suscripción del contrato es solidaria, por tanto, más allá de la existencia de la obligación, es evidente, que la obligación establecida en el contrato petrolero es solidaria y no puede dividirse. Perenco Ecuador Limited precisa en su recurso que en la sentencia recurrida, en varias ocasiones, se reconoce la solidaridad de las compañías y en el acta de determinación, en el punto 3.3. se citan los artículos 1527 y 1530 del Código Civil. Señala que el segundo inciso del artículo 568 del Código Civil no ha sido aplicado por el Tribunal A quo, siendo que el Código Civil manifiesta que los miembros de una corporación pueden obligarse de forma particular respecto de una obligación solidaria, en este caso, es obvio que Perenco al acudir de forma individual respecto de la obligación solidaria, se obligó de forma particular sobre la obligación establecida en las actas de determinación, por tanto, si se acepta el criterio de que existe el supuesto Consorcio no se puede constituir la "litis consorcio necesaria" mencionada por la Sala A quo ya que la obligación, de acuerdo con el propio SRI y el contrato petrolero, es solidaria. Es decir, se aceptaría que, por ser solidaria, se puede cobrar la totalidad de la deuda y demandar por dicha obligación a cualquiera de las empresas que supuestamente suscribieron el contrato petrolero, pero estas compañías no pueden acudir individualmente a defenderse, esto no tiene lógica alguna. Continúa argumentando el recurrente que es importante tomar en cuenta lo manifestado en el artículo 1527 (antes 1554), que tampoco fue aplicado por el Tribunal y que en lo pertinente manifiesta: "En general, cuando se ha contraído por muchas personas o para con muchas la obligación de una cosa divisible, cada uno de los deudores, en el primer caso, está obligado solamente a su parte o cuota en la deuda; y cada uno de los acreedores, en el segundo, sólo tiene derecho para demandar su parte o cuota en el crédito. Pero en virtud de la convención, del testamento o de la ley, puede exigirse a cada uno de los deudores o por cada uno de los acreedores el total de la deuda; y entonces la obligación es solidaria o in sólidum…". La solidaridad quedó determinada por el propio contrato y el SRI, y el Tribunal inferior así lo han reconocido, por tanto, cualquiera de las partes del supuesto Consorcio podía hacerse cargo de la totalidad de la obligación y acudir de forma individual en la demanda, y así lo confirma el artículo 1536 del Código Civil. El artículo citado evidencia que Perenco como deudor solidario, puede acudir planteando excepciones que resulten propias de la naturaleza de la obligación y, además, todas las personales como sucedió en el presente caso, por tanto, es irrisorio que respecto de una obligación solidaria se pretenda aplicar el criterio de "litis consorcio necesario.". Añade la compañía recurrente que durante el proceso administrativo se ha aceptado el criterio de solidaridad, igualmente, se ha aceptado dicho criterio por la Sala A quo, por tanto, mal se puede establecer un criterio de litis consorcio necesario cuando los deudores solidarios pueden ser demandados de forma individual y su defensa también puede realizarse de forma individual. En las actas de determinación del SRI se puede evidenciar en la página 6 de ambas actas de determinación que se menciona: "Art. 1530. - El acreedor podrá dirigirse contra todos los deudores solidarios juntamente, o contra cualquiera de ellos a su

arbitrio, sin que por éste pueda oponérsele el beneficio de división.". Si no se le otorga al deudor el beneficio de división, ¿cómo se puede pretender aplicar el criterio de litis consorcio necesaria sobre una deuda solidaria? La solidaridad pretende proteger el interés del acreedor, en este caso del SRI, frente a la pluralidad de obligados frente a la deuda tributaria sin que esto limite la defensa individual de cada deudor. En efecto, lo que se pretende a través de la solidaridad es precisamente proteger al acreedor, se busca que el perjudicado pueda demandar de forma individual a cualquiera de los responsables para reclamarle la totalidad del valor adeudado, sin que le sea oponible la excepción de falta de litisconsorcio necesario; o que podrá demandar sólo a uno, o a todos los deudores, por tanto, es absurdo que se pretenda aplicar el concepto de litis consorcio necesaria que busca proteger al acreedor cuando uno de los supuestos deudores, que además de ser calificado como operador, se defiende en contra de una deuda solidaria de forma individual. Más aún si la obligación se determinó tomando de base las declaraciones de impuestos de Perenco, y las otras compañías ya que el supuesto Consorcio no tiene declaración de impuesto ya que ni siquiera tiene RUC. Finalmente, la compañía recurrente manifiesta que en el punto 4.4. de la sentencia recurrida, la Sala A quo al citar el artículo 3 del Reglamento para la aplicación de la Ley de Régimen Tributario Interno evidenció que la demanda fue presentada por Perenco de forma individual debido a que se le pretende imputar una obligación solidaria, sin tomar en cuenta que esto se puede realizar conforme lo establece el artículo 1536 (SIC) del Código Tributario. Concluyendo la compañía recurrente que si se aplica el artículo 3 del Reglamento antes referido, se debía aplicar el criterio de solidaridad, sin embargo, se aplica este artículo para desechar la demanda. Esta violación directa queda en evidencia debido a que no se han nombrado siquiera, peor analizado o aplicado, las normas antes mencionadas a excepción del artículo 3 del Reglamento, siendo determinantes en la parte resolutiva ya que de haberse analizado o aplicado adecuadamente se hubiese entendido que las obligaciones solidarias no son divisibles y que pueden ser defendidas en juicio por cualquiera de los deudores solidarios como sucedió en este caso. Tan es evidente que la violación afecta a la resolución del Tribunal que de eliminarse el concepto de litis consorcio necesario de la sentencia se entraría a conocer el fondo de la litis, en este caso, no se ha conocido ninguno de los argumentos de fondo ya que según la Sala del Tribunal no es necesario realizar ninguna otra consideración ante la imposibilidad de pronunciar sentencia de fondo.

Respecto de la fundamentación de la causal tercera del artículo 3 de la Ley de Casación por el vicio de falta de aplicación de los preceptos jurídicos aplicables a la valoración de la prueba, concretamente la falta de aplicación de los artículos 114, 115 y 117 del Código de Procedimiento Civil y del artículo 103 numeral 7 del Código Tributario, Perenco Ecuador Limited argumenta en su recurso que la Sala A quo sustenta la existencia del supuesto Consorcio citando varias cláusulas del contrato petrolero, sin tomar en cuenta ni analizar otras cláusulas que evidencian que formar un consorcio era opcional, pero más importante es que durante toda la sentencia no se habla ni analiza ninguna de las pruebas presentadas por Perenco para mostrar la inexistencia del Consorcio. La sentencia recurrida menciona que el Consorcio "surge por efecto del contrato de prestación de servicios para la exploración y explotación de hidrocarburos del Bloque 7", es decir, la única prueba que se analiza, y de forma parcial, para sostener la existencia del supuesto Consorcio es el contrato petrolero, sin analizar ninguna otra prueba y analizar de forma completa el referido contrato. La compañía recurrente detalla en su recurso toda la prueba que alega haber actuado oportunamente dentro del proceso, y que según

explica, evidencian que a pesar de existir una obligación solidaria, nunca existió el supuesto consorcio. Posteriormente, y luego de reproducir la prueba aportada en el proceso Perenco Ecuador Limited pregunta ¿Acaso alguna de estas pruebas ha sido revisada, analizada o siquiera enunciada por el Tribunal A quo? ¿Acaso el contrato es suficiente para demostrar la existencia del Consorcio? Señala que el artículo 115 del Código de Procedimiento Civil no ha sido aplicado por la Sala A quo en su sentencia, es decir, no ha enumerado, revisado, enunciado o peor analizado las pruebas mencionadas, peor expresado la valoración de todas las pruebas presentadas por Perenco, ni tampoco ha cumplido con su deber (no facultad) de apreciar la prueba en su conjunto, simplemente ha mencionado que Perenco no ha presentado documentación que pruebe que el supuesto Consorcio existe. De igual forma refiere el artículo 117 del Código de Procedimiento Civil y menciona que en este caso las pruebas presentadas, a pesar de haber sido agregadas al proceso en legal y debida forma, no fueron consideradas al momento de resolver. Consecuentemente, también se ha dejado de aplicar el artículo 117 del Código de Procedimiento Civil, que ordena a los jueces considerar las pruebas que han sido aportadas al proceso oportuna y debidamente. El no aplicar las normas antes mencionadas de valoración de la prueba generan un error evidente de derecho ya que la sentencia desestima todo argumento bajo el criterio de que existe el Consorcio. Señala la compañía recurrente que el escrito de prueba de Perenco está compuesto por XVIII acápites, en ciertos párrafos de forma directa se reproducen documentos que fueron adjuntados o que forman parte del expediente administrativo sin que en ningún momento se haga referencia a los documentos reproducidos, adjuntos al expediente o agregados, por tanto, pregunta qué valoración de la prueba ha existido en la sentencia recurrida. Refiere también el artículo 114 del Código de Procedimiento Civil y argumenta que cada parte está obligada a probar los hechos que alega, excepto los que se presumen conforme a la ley. En este caso, el SRI no aportó ningún documento que pruebe la existencia del supuesto Consorcio, sin embargo, bajo el erróneo concepto de la carga de la prueba se pretende sostener que a través del Contrato se ha demostrado la existencia de un ente cuando existen otras pruebas que demuestran lo contrario y, es más, el propio contrato evidencia que era opcional la creación de consorcio, al respecto también indica que debe tomarse en cuenta lo que dispone el artículo 103 numeral 7 del Código Tributario. En este caso no ha sucedido tal cosa; sin embargo, se tomó como ciertos todos los argumentos del SRI, sin que se haya probado, entre otros, los siguientes asuntos: a) Que durante el ejercicio 2002 haya existido el supuesto Consorcio, que haya tenido un RUC, contador o contrato que lo demuestre; b) Que Perenco estaba en conocimiento de la creación del supuesto Consorcio; c) Que existió voluntad de las partes de crear el supuesto Consorcio conforme lo establece la Cláusula 16.4 y 16.5 del contrato petrolero; d) Que el supuesto Consorcio conste en el registro o catastro de contribuyentes; e) La razón por la cual el acto impugnados fue emitido a nombre de la Contratista y no del supuesto Consorcio cuando el propio contrato distingue ambas figuras. Es más, los jueces a través de las distintas demandas que han resuelto, conocen que el SRI no solo que creó un sujeto pasivo relacionado con los contratos petroleros vinculados al Bloque 7 y Bloque 21, sino que creó cuantos sujetos quiso o necesitó, sin que ninguno de ellos tenga RUC ni haya presentado declaraciones antes del 2006. A continuación, la compañía recurrente hace un detalle de todos los sujetos creados a partir del 2002 por el SRI, según señala, a su conveniencia, a través de la aplicación ilegal de su facultad determinadora al emitir actas de determinación. Señala que no se creó uno sino siete sujetos pasivos distintos, lo cual no tiene razón de ser. Por tanto, sin contar las empresas que supuestamente forman parte del supuesto Consorcio, en el

catastro del SRI deberían constar todos estos sujetos pasivos sobre los cuales se iniciaron procesos de determinación, todo esto a pesar de que se ha aportado con prueba oportunamente actuada dentro de cada proceso que evidencia que nunca existió el supuesto Consorcio. Concluye el recurrente señalando que no se analizó la prueba presentada por Perenco, en especial la relacionada con la inexistencia del supuesto Consorcio, es decir, no se ha ponderado adecuadamente las pruebas presentadas por ninguna de las partes, lo cual es ilegal y contraviene directamente las normas de valoración antes citadas.

Finalmente, en lo que se refiere a la fundamentación del vicio de falta de aplicación del artículo 1453 del Código Civil, artículo 26 de la Ley de Hidrocarburos, artículo 6 del Reglamento del Sistema Especial de Licitación y de la Resolución del SRI No. 437, la compañía recurrente señala que el SRI emite el acta de determinación respecto del sujeto pasivo "contratista que suscribió con el Estado ecuatoriano el contrato modificatorio de prestación de servicios a participación para la exploración y explotación de hidrocarburos en el Bloque 7 de la Región Amazónica que incluye el convenio de explotación unificada del campo Coca-Payamino". Señala que a pesar de la alegación realizada en la demanda de la inexistencia del sujeto pasivo, la H. Sala acepta la existencia del supuesto Consorcio, sin tomar en cuenta ninguna de las pruebas aportadas en el proceso y, sobre todo luego de que se demostró que el "supuesto Consorcio", a cargo del cual el SRI levantó el acta de determinación, no existió durante el ejercicio fiscal 2002. Señala Perenco que el SRI creó éste ente debido a que su facultad determinadora había caducado, y necesitaba un medio para iniciar un proceso de determinación a cargo de Perenco y las otras compañías que suscribieron el contrato petrolero. Efectivamente, el contrato petrolero fue suscrito entre PETROECUADOR y varias empresas, todas con personalidad jurídica propia, independientes entre sí, y a las que, en conjunto, para los efectos previstos en el contrato petrolero, se les denominó la "Contratista". Esta "Contratista" nunca existió como persona jurídica independiente de las partes, o como una sociedad para efectos impositivos; por el contrario, el término "Contratista" se utilizó para identificar a un grupo de empresas que suscribieron de forma solidaria, el contrato petrolero con PETROECUADOR. El SRI para poder demostrar la existencia del supuesto Consorcio debió presentar el acuerdo o voluntad de las partes o la norma que crea dicho ente, lo cual nunca sucedió. Más allá de lo antes mencionado, en Derecho, de acuerdo con el artículo 1453 del Código Civil, existen dos formas para que un consorcio o asociación nazca a la vida jurídica: a) Por voluntad de sus miembros; o, b) Por mandato legal. El artículo 1453 del Código civil, en su parte pertinente, ordena: "Art. 1453.- Las obligaciones nacen, ya del concurso real de las voluntades de dos o más personas, como en los contratos o convenciones (...); ya por disposición de la ley, como entre los padres y los hijos de familia.". A continuación la compañía recurrente analiza cada forma: a. Respecto de la voluntad de las partes señala que del expediente del proceso queda claro que en el 2002 las compañías que suscribieron el contrato petrolero nunca expresaron su voluntad de formar un consorcio o asociación y, de otro lado, el SRI desde la etapa de determinación hasta la fecha, no ha demostrado la existencia de un acuerdo entre las supuestas socias del supuesto consorcio, es más no ha presentado documento que demuestre la voluntad u obligación expresa de que las empresas se constituyan en consorcio o asociación y esto se debe a que el propio contrato de participación sancionaba con la caducidad la asociación o constitución de consorcios sin la previa autorización del Ministerio del ramo. Refiere que la cláusula 16.5 del contrato petrolero establece que si la contratista juzgare conveniente constituir consorcios o asociaciones podrán hacerlo con previa notificación de PETROECUADOR y autorización del Ministerio del Ramo, por otro lado,

la cláusula 16.5 del referido Contrato menciona textualmente: "La integración de tales consorcios o asociaciones, o el retiro de la Contratista de los mismos, sin autorización del ministerio del ramo constituirá causal para la declaratoria de caducidad de este Contrato.". Ni en el expediente administrativo ni en el expediente del proceso existe un convenio entre las partes para actuar como Consorcio ni la autorización del Ministerio del ramo a la que hacen referencia las cláusulas antes citadas, por tanto, no se ha podido demostrar la existencia del Consorcio en el 2002. El contrato petrolero fue firmado por las supuestas socias del supuesto Consorcio de forma individual e independiente y así fue probado y reconocido en la sentencia recurrida, además, como se mencionó, las contratistas no podían construir asociaciones o consorcios sin autorización del Ministerio del ramo, por tanto, queda demostrado que nunca existió voluntad de las partes de comparecer de forma conjunta y aceptando responsabilidad limitada. Además, cada una de las empresas que mantenía derechos y obligaciones en el "Contrato de Participación" tenía vida jurídica en Ecuador durante el ejercicio fiscal 2002. Todas las empresas se domiciliaron en el Ecuador por así disponerlo expresamente la Ley de Hidrocarburos en su artículo 26. Si la voluntad del legislador hubiese sido obligar a las empresas a conformar "Consorcios" como requisito previo a la suscripción de contratos con el Estado para la exploración y explotación de hidrocarburos, así lo hubiese dispuesto. Sin embargo, cuando se firmó el contrato petrolero, las empresas que lo suscribieron tuvieron la clara opción de hacerlo como empresas individuales, como ha ocurrido en este caso. Por otro lado, del artículo 6 del Reglamento del Sistema Especial de Licitación claramente se desprende que se otorgó dos opciones, dos alternativas a las compañías que debían suscribir un contrato de participación: i) comparecer individualmente; o, ii) comparecer a través de un consorcio o asociación. En el caso que nos ocupa, se optó por la primera alternativa. Por esta razón es que la ley, el contrato petrolero y el propio SRI reconocen una obligación solidaria a cargo de las compañías ya que de no asociarse el Estado ecuatoriano, a través del SRI, podía acudir a cualquiera de las compañías para cobrar la deuda tributaria no satisfecha. Señala Perenco que las compañías supuestas socias del supuesto consorcio, al atender lo ordenado en la Resolución del SRI No. 437, el 30 de diciembre de 2005 y, previa autorización del Ministerio de Energía y Minas, suscribieron el convenio de creación del Consorcio Bloque 7 y 21, por tanto, para el ejercicio económico 2002 el supuesto Consorcio nunca existió. Debido a que el "Supuesto Consorcio" a cargo del cual se levantó el acta de determinación jamás existió, es evidente entonces que Perenco Ecuador Limited jamás pudo representar a un ente inexistente y, por tanto, no tiene sentido lógico o jurídico alguno que el SRI exija a un ente inexistente el pago de una supuesta obligación tributaria, ni pretender imputar a mi representada esa supuesta obligación de ese ente inexistente. El recurrente continúa analizado la segunda forma para que un consorcio nazca a la vida jurídica: b. mandato legal, y argumenta que la ley no establece un mandato expreso u obligatorio de formar consorcios al suscribir contratos petroleros, es más la ley, como se mencionó anteriormente, entrega la opción para que las compañías escojan si quieren o no formar consorcios, todo esto sujeto a la autorización del Ministerio correspondiente. El artículo 6 del Reglamento del Sistema Especial de Licitación ordena que las compañías que suscriban contratos petroleros pueden optar por formar consorcios o asociaciones o actuar individualmente. Solamente a partir de una disposición expresa del Servicio de Rentas Internas, contenida en la Resolución No. 437 (Registro Oficial 110 de 23 de septiembre del 2005) y luego de que el Ministerio de Energía y Minas lo autorizó (mediante Acuerdo Ministerial No. 049) las empresas que mantenían derechos y obligaciones sobre el contrato de participación

conformaron un Consorcio, esto es, una nueva sociedad para efectos tributarios. Una vez constituido el Consorcio Bloque 7 y Bloque 21 en el 2006 se obtuvo el correspondiente RUC, cabe mencionar que de haber existido el supuesto Consorcio en el 2002, el SRI debió continuar con las determinaciones respecto del supuesto sujeto pasivo; sin embargo, el SRI desde el 2006 realizó determinaciones al Consorcio Bloque 7 y Bloque 21 que fue constituido conforme a la referida Resolución del SRI  No. 437. De esta forma, no existe fuente alguna que permita alegar el nacimiento del supuesto Consorcio por que las compañías que suscribieron el contrato prefirieron obligarse frente al Estado de forma individual. Afirma la compañía recurrente que ese es el análisis que debió realizar el Juez ponente y no simplemente considerar que el supuesto Consorcio existe por la simple lectura de las cláusulas que convenientemente aportan a la tesis del SRI y que, por tanto, existe litis consorcio necesaria sobre una deuda de carácter solidario. Quedó demostrado que jamás se aplicó el artículo 1453 del Código Civil y que no existió voluntad alguna de Perenco para constituir un consorcio ni norma alguna que la obligue a hacerlo. Por lo tanto, el acta de determinación es nula, por haber sido emitida a cargo de un contribuyente que en el ejercicio fiscal 2002 simplemente no existía, ya que constituir un consorcio sin la autorización del Ministerio de Energía y Minas hubiera significado la caducidad del contrato. Queda también demostrado que en la sentencia recurrida no ha existido un mínimo análisis del artículo 26 de la Ley de Hidrocarburos que permite la domiciliación individual de cada empresa, pero aún, de la simple lectura de la sentencia, también se puede evidenciar que nunca se tomó en cuenta el artículo 6 del Reglamento del Sistema Especial de Licitación que permite de forma opcional la participación de las compañías de forma individual o de forma consorcial, estas normas forman parte de un sistema que protege tanto la opción de las compañías de actuar como consorcios o de forma individual sin dejar de lado la protección al Estado ecuatoriano estableciendo la solidaridad de la deuda tributaria. Finalmente, Perenco manifiesta que la sentencia recurrida, en el punto 4.3., menciona que el SRI a través de la Resolución 437, ordenó la creación de los consorcios petroleros a partir del 30 de diciembre de 2005, sin realizar ningún otro análisis y sin considerar que incluso esta resolución exigía que para crear un consorcio se necesitaba la autorización del Ministerio de Energía y Minas, todos estos argumentos más las pruebas presentadas no han sido ponderadas o debidamente analizadas. Hay que tomar en cuenta que este vicio, más allá del efecto que se evidencie en la resolución, también busca revisar la legalidad de la valoración de la prueba y en este caso es evidente que al no aplicarse ninguno de los artículos mencionados y considerar que no se ha presentado prueba ya es sustento suficiente para evidenciar el error cometido, pues la Sala señala que no se ha presentado prueba alguna que evidencie que no existe el consorcio.

DÉCIMO TERCERO: ANÁLISIS DEL VICIO ALEGADO.- Esta Sala Especializada de lo Contencioso Tributario de la Corte Nacional de Justicia, para resolver los problemas jurídicos planteados derivados del cuestionamiento al fallo de instancia, con fundamento en las causales primera y tercera del artículo 3 de la Ley de Casación, admitido por el Conjuez de la Sala, considera:

13.1  Causal primera.- i. La  falta de aplicación "ocurre cuando el sentenciador niega en el fallo la existencia de un precepto, lo ignora frente al caso debatido. Es error contra ius, es rebeldía y desconocimiento de la norma. Es error de existencia de la norma por haberse excluido ésta en la sentencia.". ii. El recurrente cuestiona el fallo de instancia por haber incurrido en falta de aplicación de los artículos  568, inciso segundo, 1453, 1527 y 1530 del Código Civil, 26 de la Ley de Hidrocarburos,

6 del Reglamento Especial de Licitación y la Resolución del SRI No. 4377, así como la indebida aplicación del artículo 3, inciso tercero del Reglamento a la Ley de Régimen Tributario Interno. El cuestionamiento gira en torno a la existencia o no del consorcio, lo que habría provocado la falta de legitimado activo, por la no comparecencia de todos los integrantes del mismo a cuestionar los actos de determinación tributaria, esto es la figura procesal de litis consorcio necesario; iii. La sentencia cuestionada establece que en razón de que la determinación se efectuó en contra de una pluralidad de sujetos que conformaban una entidad económica independiente, sujeto pasivo del impuesto a la renta, por lo que la intervención de la empresa actora a título propio resulta insuficiente, desde el punto de vista procesal, para impugnar un acto que afecta a terceros que no han comparecido a hacer valer sus derechos, por lo que concluyen que se ha suscitado lo que en doctrina se conoce como falta de legitimación en la causa por ausencia de litis consorcio, sin que llegue a pronunciarse por los temas de fondo; iv. Analizada la sentencia, en el considerando cuarto desarrolla los argumentos que sostienen su decisión, así: a) Que la compañía compareció en la presente causa por sus propios derechos;  b) Que el contrato fue suscrito por una pluralidad de sujetos, que conforman una unidad económica con obligaciones  tributarias propias, originadas en el contrato de prestación de servicios petroleros del Bloque 7; c) Que la actora niega la existencia del consorcio, que se conforma con fecha posterior al periodo del examen; d) Que la Ley de Régimen Tributario, artículo 94 regula el término sociedad, incluyendo a entidades carentes de "personería jurídica", así como la obligación de declarar el impuesto a la renta por parte del consorcio o asociaciones de empresas, según el artículo 3 del Reglamento a la LRTI; e) Que tanto el contrato como la legislación vigente definen al contratista como un sujeto distinto a las empresas que lo conforman con obligaciones tributarias propias derivadas del contrato. Concluye que la intervención de la empresa PERENCO ECUADOR LIMITED a título propio resulta insuficiente, desde el punto de vista procesal, para impugnar un acto que afecta a terceros que no han comparecido a hacer valer sus derechos, estableciendo que se produce lo que en doctrina se conoce como falta de legitimación en la causa por ausencia de litis consorcio necesario, en base a lo cual desecha la demanda, sin emitir decisión sobre el fondo del asunto como expresamente lo deja sentado; v. Para resolver el cuestionamiento, corresponde verificar qué clase de figura constituye la denominada "CONTRATISTA" para efectos tributarios: a) Como lo establece la sentencia, la contratista, originalmente integrada por KERR McGEE ECUADOR ENERGY CORPORATION, en calidad de operadora del Bloque 7 y las compañías SANTA FE MINERALES DEL ECUADOR S.A, SOCIEDAD INTERNACIONAL PETROLERA S.A, y la COMPAÑÍA LATINOAMERICANA PETROLERA S.A. (CLAPSA) suscribieron el "Contrato modificatorio de prestación de servicios  a contrato de participación  para la exploración y explotación de hidrocarburos en el Bloque 7 (Contrato de Participación)"; b) La empresa actora PERENCO ECUADOR LIMITED asume la condición de operador del Bloque 7, por la cesión de los derechos y obligaciones realizadas a su favor por la compañía KERR McGEE ECUADOR ENERGY CORPORATION  a partir del 4 de septiembre de 2002, fecha del contrato de cesión; c) El ejercicio determinativo que concluye con el Acta de Determinación  No. 1720060100224 de 29 de noviembre de 2006, objeto de la acción de impugnación, por el ejercicio fiscal 2002, lo realiza la Administración Tributaria al "CONTRATISTA QUE SUSCRIBIO CON EL ESTADO ECUATORIANO EL CONTRATO MODIFICATORIO DE PRESTACIÓN DE SERVICIOS A PARTICIPACIÓN PARA LA EXPLORACION Y EXPLOTACION DE HIDROCARBUROS EN EL BLOQUE 7 DE LA REGION AMAZÓNICA

QUE INCLUYE EL CONVENIO DE EXPLOTACIÓN UNIFICADA DEL CAMPO COCA-PAYAMINO"; d) El "CONTRATISTA" como consta en el contrato, (fs. 437 a 498 del proceso) es un grupo de empresas que quedan plenamente identificadas, donde la actora de la causa tiene el rol de operador del Bloque 7, fruto de la cesión de derechos que operó a su favor; consecuentemente, sin que exista, al año del ejercicio determinado, ningún consorcio constituido, es indudable que el "CONTRATISTA" es una sociedad, en la acepción general del término, distinta de quienes, como consecuencia del contrato suscrito, asumen, de hecho, una responsabilidad solidaria, pues el contrato no discrimina ni especifica obligaciones individuales para las empresas suscriptoras, sino para la "CONTRATISTA" como un sujeto autónomo, y como tal, sujeto pasivo del impuesto a la renta, al tenor de lo preceptuado en el artículo 4 de la Ley de Régimen Tributario Interno, vigente a la fecha del ejercicio en discusión; v. La empresa actora, si bien comparece a título individual, es indudable que lo que cuestiona es el acta de determinación que la Administración Tributaria ha levantado en contra de la "CONTRATISTA", de la que es operadora del Bloque 7, por lo que corresponde verificar si la figura de "litis consorcio necesario", utilizado por el Tribunal de instancia en la sentencia cuestionada es aplicable al caso; vi. La falta de derecho del actor o ilegítimo contradictor, no es un presupuesto de validez del proceso, pero sí de la sentencia de fondo o mérito; sobre la legitimación en la causa, la Sala de lo Civil de la Corte Nacional ex-Suprema ha dicho: "es preciso distinguir lo que es la ilegitimidad de personería de lo que es la falta de legítimo contradictor, o falta de legitimación en la causa (legitimatio ad causam), que consiste en que el actor debe ser la persona que pretende ser el titular del derecho sustancial discutido, y el demandado el llamado por la ley a contradecir u oponerse a la demanda, pues es frente a ellos que la ley permite que el juez declare, en sentencia de mérito, si existe o no la relación jurídica sustancial objeto de la demanda, sentencia que los obliga y produce cosa juzgada sustancial", (Resolución de la Primera Sala de lo Civil y Mercantil N° 5 16-99 dictada dentro del juicio N°159-98); "Determina no sólo quienes deben obrar en el proceso con derecho a obtener sentencia de fondo, sino, además, quienes deben estar presentes para que sea posible esa decisión de fondo. Se habla de necesarios contradictores, para indicar que en ciertos procesos es indispensable que concurran determinadas personas (como litisconsortes necesarios), bien sea como demandantes o como demandados, para que la decisión sobre las peticiones de la demanda sea posible" (el subrayado corresponde a la Sala), Resolución de la Primera Sala de lo Civil y Mercantil N° 372-99 dictada dentro del juicio N° 820-94, publicada en el Registro Oficial N° 257 de 18 de Agosto de 1999; "Cuando en un contrato una de las partes está integrada por varias personas, la relación sujeto y objeto debe establecerse entre cada una de ellas y el objeto que viene a ser la relación sustancial, la no concurrencia de una persona acarrea la falta de legitimación ad caussam; y es que hay casos en que la presencia en el proceso de todos los sujetos vinculados a un contrato (relación sustancial) se hace indispensable a fin de que la relación jurídica procesal quede completa y sea posible decidir sobre el fondo de ella; si los sujetos son dos o más, pero forman un solo sujeto, estamos en presencia de un litis consorcio necesario y su comparecencia es indispensable", (el subrayado corresponde a la Sala) Resolución de la Primera Sala de lo Civil y Mercantil N° 118-99 en el juicio 100-96, publicada en el Registro Oficial N° 160 del 31 de marzo de 1999 (referencias tomadas del artículo Capacidades y legitimaciones en el proceso civil de Lorena Cascante Redín); como se desprende de las referencias jurisprudenciales, la legitimidad en la causa es aplicable en determinadas circunstancias, no en todos los casos, como regla única; vi. En materia tributaria, el sujeto pasivo es la persona natural o jurídica

obligada al cumplimiento de la prestación tributaria, ya como contribuyente, ya como responsable; lo son también las entidades que, carentes de personalidad jurídica constituyan una unidad económica o un patrimonio independiente (artículo 24 del Código Tributario); en el presente caso, indudablemente, al constituir una unidad económica, el "CONTRATISTA" es sujeto pasivo de la obligación, independiente de sus integrantes; vii. Ahora bien, como se deja expuesto, la actora de la causa, PERENCO LIMITED, actúa como operadora del Bloque 7, objeto del contrato, tema que no está en discusión, por lo que es perfectamente válido que actúe en representación de la "contratista", toda vez que, tratándose de una sociedad de hecho, sin conformación legal, obliga de manera solidaria a cada uno de sus miembros, al tenor de lo preceptuado en el último inciso del artículo 568 del Código Civil, aplicable al caso. La responsabilidad solidaria le da la opción de repetir a los demás integrantes de la sociedad, de ser el caso; viii. No se puede pretender, a título de falta de legitimación en la causa, evitar un pronunciamiento de fondo sobre los puntos objeto del litigio, que son perfectamente impugnables, al tenor de lo preceptuado tanto en la Constitución de la república, como en la Ley de Régimen Tributario Interno y el Código Tributario; no dar paso al conocimiento y decisión de fondo, implicaría dejar en la indefensión al actor y una flagrante vulneración a la tutela de derechos, objeto de la acción contencioso tributaria, conforme al mandato del artículo 300 del COGEP. Aceptándose el recurso interpuesto, al no existir decisión de fondo, corresponde que el expediente vuelva al Tribunal de instancia para que se pronuncia sobre los cuestionamientos a los cargos establecidos por la Administración Tributaria.

13.2. Respecto de los vicios fundados en la causal tercera del artículo 3 de la Ley de Casación por el vicio de falta de aplicación de los preceptos jurídicos aplicables a la valoración de la prueba, concretamente la falta de aplicación de los artículos 114, 115 y 117 del Código de Procedimiento Civil y del artículo 103 numeral 7 del Código Tributario, no procede su análisis por lo resuelto en el considerando precedente.

DÉCIMO CUARTO.- DECISIÓN.- Por las consideraciones antes referidas, esta Sala Especializada de lo Contencioso Tributario de la Corte Nacional de Justicia, ADMINISTRANDO JUSTICIA, EN NOMBRE DEL PUEBLO SOBERANO DEL ECUADOR, Y POR AUTORIDAD DE LA CONSTITUCIÓN Y LAS LEYES DE LA REPÚBLICA, resuelve CASAR el fallo dictado por el Tribunal Distrital de lo Contencioso Tributario con sede en el Distrito Metropolitano de Quito, provincia de Pichincha, el 4 de diciembre de 2017, las 12h12, dentro del juicio de impugnación No. 17505-2007-24646. En razón de no existir una decisión de mérito sobre el fondo del litigio, se dispone que el proceso vuelva al Tribunal, para que el mismo Tribunal,  u otro, manteniendo la ponencia en el Juez sustanciador, expida sentencia sobre los temas controvertidos, a la brevedad posible.

Notifíquese, Publíquese y Devuélvase.-

f).- JOSE DIONICIO SUING NAGUA, JUEZ NACIONAL; MORALES ORDÓÑEZ GILDA ROSANA, JUEZA NACIONAL; GUSTAVO ADOLFO DURANGO VELA, JUEZ NACIONAL (E)

Lo que comunico a usted para los fines de ley.

LIGIA MARISOL MEDIAVILLA
**SECRETARIA RELATORA**



STATE OF NEW YORK      )
                       )
                       )      ss
COUNTY OF NEW YORK     )

**CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Spanish into English of the attached document.

_____

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me

this _13_ day of _JANUARY_ , 20 _22_ .

_____

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires 09-23-2023