**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PERENCO ECUADOR LTD., | ) | |
| *Petitioner*, | ) | |
| v. | ) | Case No. 19-cv-02943-JMC |
| THE REPUBLIC OF ECUADOR, | ) | |
| *Respondent*. | ) | |
| | ) | |

**PETITIONER'S OPENING BRIEF REGARDING THE NOVEMBER 8, 2021 DECISION OF THE ECUADORIAN NATIONAL COURT OF JUSTICE**

Petitioner Perenco Ecuador Limited ("Perenco"), by and through undersigned counsel, submits this brief in accordance with this Court's minute order dated January 18, 2022. Perenco brought this action in order to enforce an arbitration award against Respondent The Republic of Ecuador ("Ecuador"). Petition to Enforce Arbitral Award ("Petition"), ECF No. 1. Ecuador's only defense to enforcement is its argument that various Ecuadorian income tax claims can be set off against the award, or, to the extent they are not yet final and enforceable, warrant a stay of enforcement. Partial Opposition to Petition to Enforce Arbitral Award and Cross-Motion for Setoff, ECF No. 20 ("Cross-Motion"). On November 8, 2021, the Tax Chamber of the Ecuadorian National Court of Justice—Ecuador's highest court—overturned one of the Ecuadorian tax judgments that Ecuador sought to set off in its Cross-Motion. That decision not only precludes Ecuador from seeking to set off the particular tax debt at issue, but also establishes that ***all*** of the purportedly final tax assessments are still subject to valid and meritorious challenges and thus cannot be enforced against Perenco via a set-off in this case.

## BACKGROUND

Perenco commenced this action by filing the Petition on October 1, 2019. *See* ECF No. 1. The Petition sought recognition and enforcement of an arbitral award (the "Award") rendered against Ecuador by an arbitral tribunal constituted under the France-Ecuador Bilateral Investment Treaty and the International Centre for the Settlement of Investment Disputes ("ICSID") Convention. *See id.* On December 26, 2019, this Court issued a Minute Order staying these proceedings at the parties' request and pending the resolution of Ecuador's application to ICSID for annulment of the Award. *See* Joint Stipulation and Order at 1–2, Dec. 9, 2019, ECF No. 7; Minute Order, Dec. 26, 2019.

On May 28, 2021, the ISCID committee constituted to consider Ecuador's application for annulment issued a decision concluding the annulment proceeding and largely confirming the Award (the "Annulment Decision"). Joint Status Report at 1–2, June 21, 2021, ECF No. 15. The parties notified this Court of the Annulment Decision in a joint status report dated June 21, 2021. *Id.* On July 27, 2021, the parties submitted a Supplemental Joint Status Report informing this Court of their agreement that the net amount due to Perenco under the Award as of that day (July 27) was US$391,393,984, "subject to additional post-Award interest until full and final payment." Supplemental Joint Status Report at 2, ECF No. 17. On July 28, 2021, this Court granted Perenco's Unopposed Motion to Lift Stay. Minute Order, July 28, 2021.

On August 9, 2021, Ecuador filed its Cross-Motion. ECF No. 20. Ecuador claimed that Perenco "currently owes the Republic debt of unpaid income tax in the amount of $40,845,760.13 . . . which debt has been finally adjudicated in the courts of the Republic," and asked this Court to "offset" that sum against the amount due to Perenco under the Award. *Id.* at 1–3. Ecuador further requested that this Court "stay enforcement of the Award against"

$30,671,345.44 in alleged "[a]dditional income tax claims" against Perenco that are "currently being litigated in the courts of the Republic." *Id.* at 2, 4. In support of its Cross-Motion, Ecuador submitted, among other things, a declaration by Mr. Andrés Danilo Ordóñez Córdova, the General Assistant Director for Tax Enforcement of the Internal Revenue Service of Ecuador and an expert report and declaration by Professor Carlos Andrés Coronel Endara. *See id.* at 3.

On September 20, 2021, Perenco filed its Consolidated Response to the Republic of Ecuador's Partial Opposition and Cross-Motion ("Consolidated Response"). ECF Nos. 29-30. Perenco explained in its Consolidated Response that Ecuador's request for a tax set-off "fails for six independent reasons, most of which Ecuador has not even attempted to address." *Id.* at 2. *First*, the implementing legislation for the ICSID Convention, 22 U.S.C. § 1650a, does not permit set-off as a defense to enforcement of an ICSID arbitration award. *Id.* *Second*, even if such a set-off were permitted, Ecuador is judicially estopped from contesting enforcement because Ecuador's Minister of Economy and Finance, on behalf of the Republic, promised that if it did not succeed in annulling the Award it would pay it "unconditionally, voluntarily and in full, within 60 days" of the decision on annulment, "without such payment being . . . subject to enforcement proceedings." Consolidated Response, at 2-3. *Third*, that promise also waived Ecuador's right to seek a set-off. *Id.* at 3. *Fourth*, a longstanding U.S. common law doctrine prohibiting U.S. courts from enforcing foreign tax claims and judgments (the so-called revenue rule) completely bars Ecuador's attempt to set off purported foreign tax liabilities. *Id.* at 3.

*Fifth*, even if Ecuador could overcome each of those obstacles, there would be no basis for affording comity in a U.S. court to the approximately $40 million in tax judgments that Ecuador claimed were final and enforceable. *Id.* at 3-4. Ecuador had not even attempted to meet its burden of proof on that issue in its Cross-Motion. And Perenco submitted a declaration by

Emmanuel Colombel, Perenco S.A.'s Chief Financial Officer, and a report by Carmen Simone Lasso, a leading expert in Ecuadorian tax law and procedure, former tax judge, and former Vice Minister of Human Rights ("Simone Rep.", ECF No. 33), showing that there were recognition-defeating problems with the allegedly final judgments. *Id.* at 4. Among other things, those judgments and the underlying tax assessments violate due process because they purport to hold Perenco liable after denying Perenco an opportunity to contest them in court and are time-barred. *Id.* Perenco explained that those fundamental deficiencies also rendered the Ecuadorian tax judgments unenforceable under D.C. law. *Id.* at 37-38. *Sixth*, Perenco showed that Ecuador had not borne its burden of establishing that an equitable-set-off is warranted in this case. *Id.* at 4-5.

Ecuador filed its Reply in Support of Its Cross-Motion for Setoff on October 18, 2021 ("Reply"), which, among other things, increased the amount of purportedly final and enforceable Ecuadorian tax liability from $40,845,760.13 to $53,775,998.36. ECF No. 40, at 14; *see also* Reply, Exhibit A – Final and Enforceable Tax Claims as of Oct. 18, 2021, ECF No. 40-1. Ecuador's Reply concluded the parties' briefing on Perenco's Petition and Ecuador's Cross-Motion.

On November 8, 2021, the Tax Chamber of the Ecuadorian National Court of Justice ("Court of Justice"), issued a decision (the "November 8 Decision") overturning one of the purportedly "final and enforceable" judgments that Ecuador seeks to set off, and doing so in terms that confirm Professor Simone's expert opinion about the tax claims' invalidity and lack of finality.

On January 14, 2022, following discussions between the parties regarding the significance of the November 8 Decision, the parties agreed that the decision is "relevant to the matters in dispute and should be added to the record in this case" and moved the Court to

supplement the record with the new ruling. Joint Motion for Leave to Supplement the Record, for a Briefing Schedule, and for the Scheduling of Oral Argument, ECF No. 46, at 1. However, the parties were unable to reach an agreement regarding the significance of the November 8 Decision for the pending Petition and Cross-Motion, and accordingly also moved this Court for entry of a briefing schedule on that issue. *See id.* This Court granted the parties' request for a briefing schedule on January 18, and Perenco accordingly submits this brief in line with the Court's order.

**ARGUMENT**

Just three weeks after Ecuador submitted its Reply, Ecuador's highest court issued a final and binding decision that overturned one of the judgments upon which Ecuador relies for purposes of its set-off defense and cast serious doubt on the fairness, legality, and/or finality of the remaining tax liabilities, just as Perenco's expert, Professor Simone, had opined in her initial report and now explains in a supplemental report ("Supplemental Report" or "Simone Supp. Rep."). This significant new ruling confirms Perenco's arguments that the purported Ecuadorian tax debts are not enforceable against Perenco in this Court and that the Court should thus grant Perenco's petition to enforce the Award and deny Ecuador's cross-motion for a set-off.

Ecuador had claimed in its Cross-Motion that a 2002 tax assessment against Perenco was "final and enforceable under Ecuadorian law" and that it, along with five other assessments totaling approximately $40 million, could therefore be set off against the Award. Ecuador's Mem. in Supp. of Opp. to Pet. to Enforce Arbitral Award and Cross-Mot. for Setoff, ECF No. 19, at 18 (Table, Row 1). That was incorrect, as Professor Simone explained in her rebuttal report. The District Tax Court's rulings that Perenco lacked standing to challenge the tax assessments for fiscal years 2002-2005 were an egregious violation of both Ecuadorian law and due process

principles, Simone Rep. ¶¶ 15, 87-95, and, for that and other reasons, the tax assessments that Ecuador relied on were "far from being final or enforceable," *id.* ¶¶ 12-14. Accordingly, Perenco argued, this Court could not extend comity to and enforce the supposedly final tax claims via a set-off against the Award. Consolidated Response at 34-35, 37-38.

Ecuador and its experts disparaged Professor Simone's opinion, claiming that she did "not identify any alleged serious procedural improprieties or due process violations in the prosecution of the tax claims against Petitioner," but "simply disagrees with the substance of some of the decisions." Reply at 23; Second Declaration of Andrés Danilo Ordoñez Córdova (English Translation) ¶¶ 7-15, ECF No. 42-12; Second Expert Report on Ecuadorian Tax Law of Carlos Andrés Coronel Endara (English Translation) ¶¶ 31-41, ECF No. 42-1. Ecuador also denied that the approximately $40 million in tax liabilities it sought to set off were not final and enforceable, and instead claimed that a further assessment was final and enforceable, raising the total to approximately $53 million. Reply at 14; *see also* Reply, Exhibit A, ECF No. 40-1.

Three weeks later, the Court of Justice confirmed Professor Simone's opinion and held that denying Perenco an opportunity to contest the 2002 tax assessment was "a gross violation [of] rights" that had left Perenco "defenseless." Simone Supp. Rep. ¶¶ 12, 21. The Court of Justice accordingly vacated the District Tax Court's decision and ordered it to address Perenco's arguments on the merits. *Id.* ¶ 12. As Professor Simone's Supplemental Report explains, the November 8 Decision confirms that the specific tax assessment at issue is not final and enforceable. Indeed, after the Court of Justice's decision, the Ecuadorian tax authorities ordered the suspension of all enforcement measures associated with that assessment. *See* Addendum, Order of the Ecuadorian Internal Revenue Service (Jan. 11, 2022).

More importantly, the November 8 Decision establishes that ***all*** of the remaining purportedly "final and enforceable" tax assessments are still subject to valid challenges that may take years to resolve. Simone Supp. Rep. ¶¶ 13-16, 24-37. Professor Simone explains that even where an assessment is currently subject to enforcement measures as a matter of Ecuadorian procedure, as was the case for the assessment at issue in the November 8 Decision, the assessment "is not truly collectable against Perenco" because "Perenco still has remedies against it that are real and substantial." *Id.* ¶¶ 15, 27, 31. As Professor Simone's Supplemental Report confirms, the Court of Justice's holding that Perenco was denied due process applies equally to the other tax assessments that Perenco has not been permitted to challenge on the merits. *Id.* ¶ 13.

This Court can and should reject Ecuador's set-off defense as a matter of law by reference to the first four arguments in Perenco's Consolidated Response, which are outlined above. However, should this Court reach the question whether the Ecuadorian tax judgments may be enforced in a U.S. court, the November 8 Decision and Professor Simone's Supplemental Report further prove that there is no basis for according comity to those judgments. *See* Consolidated Response at 34-35; *Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895) (U.S. courts should grant comity only if "there has been opportunity for a full and fair trial abroad . . . and there is nothing to show either prejudice in the court . . . or any other special reason why the comity of this nation should not allow [the foreign judgment] full effect"); *Ricart v. Pan Am. World Airways, Inc.*, No. CIV. A. 89-0768(HHG), 1990 WL 236080, at *1 (D.D.C. Dec. 21, 1990) (comity is afforded only to a judgment that is "final . . . according to the jurisdiction in which it was rendered"). Similarly, the November 8 Decision and Professor Simone's analysis further reinforce Perenco's argument that Ecuador's set-off defense is barred by D.C. law because the tax claims are not even enforceable in Ecuador itself. *See* Consolidated Response at

37-38; D.C. Code § 12-307 (An action to enforce a foreign judgment "is barred if by the laws of that jurisdiction, the action would there be barred and the judgment or decree would be incapable of being otherwise enforced there.").

Ecuador should not be permitted to delay enforcement of an undisputedly final and enforceable ICSID award any further by reference to local tax claims that are highly dubious at best, are not currently enforceable, and will continue to wend their way through the Ecuadorian courts for years to come. Perenco accordingly respectfully submits that this Court should grant Perenco's Petition and deny Ecuador's Cross-Motion in the terms set forth in Perenco's Consolidated Response, ECF No. 29, at 45, and the proposed order attached thereto, ECF No. 29-1.

Dated: January 25, 2022
New York, NY

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

*/s/* Mark W. Friedman

Mark W. Friedman
D.D.C. Bar No. NY0328
mwfriedman@debevoise.com

919 Third Avenue
New York, NY 10022
Phone (212) 909-6000

*Attorneys for Petitioner*
*Perenco Ecuador Limited*