**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PERENCO ECUADOR LTD., <br><br> *Petitioner*, <br><br> vs. <br><br> REPUBLIC OF ECUADOR, <br><br> *Respondent*. | Case No. 1:19-cv-02943-JMC <br><br> ORAL ARGUMENT REQUESTED |

**REPUBLIC OF ECUADOR'S RESPONSE
REGARDING THE NOVEMBER 8, 2021 DECISION
OF THE ECUADORIAN NATIONAL COURT OF JUSTICE**

Alexandre de Gramont
D.C. Bar No. 430640
DECHERT LLP
1900 K Street NW
Washington, DC  20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
alexandre.degramont@dechert.com

Michael A. Losco*
N.Y. Bar No. 5356505
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036
Tel.: (212) 698-3500
michael.losco@dechert.com
*Admitted *pro hac vice*

*Counsel for Respondent*

## **TABLE OF CONTENTS**

Page

INTRODUCTION AND BACKGROUND ................................................................................ 1
    I.      The Award at Issue and the Republic's Cross Motion .......................................... 1
    II.     The Tax Claims at Issue ....................................................................................... 2
ARGUMENT .................................................................................................................................. 4
    I.      The November 8 Decision Is Relevant Only to the Tax Assessment for 2002 (Block 7) ............................................................................................................. 4
          A.     The Issue of "Joint and Several" Liability for 2002-2005 .......................... 4
          B.     The November 8 Decision Is Irrelevant to the Other Judgments for Which the Republic Seeks Setoff. ........................................................... 7
               1.      The Judgments Based on Tax Liability for the Contractor ............. 7
               2.      The Judgments Based on Tax Liability for the Consortium ........... 9
    II.     The Court Should Reject Petitioner's Other Arguments Against Setoff, Which the Republic Has Already Refuted ....................................................................... 9
CONCLUSION ............................................................................................................................. 10

**INTRODUCTION AND BACKGROUND**

Pursuant to this Court's Minute Order dated January 18, 2022, Respondent, the Republic of Ecuador ("**Respondent**" or the "**Republic**"), hereby submits its Response regarding the Decision dated November 8, 2021 (the "**November 8 Decision**" or the "**Decision**"), Joint Ex. 1 (ECF No. 46-1), rendered by the Specialized Tax Chamber of the Ecuadorian National Court of Justice (the "**NCJ**"). In support of its Response, the Republic also submits the Third Report on Ecuadorian Tax Law by Professor Carlos Andrés Coronel Endara (the "**Third Coronel Report**").

**I.    THE AWARD AT ISSUE AND THE REPUBLIC'S CROSS MOTION**

As set forth in detail in the Parties' prior submissions, the arbitral award at issue in this matter (the "**Award**") arises from Petitioner's operation of two oil exploitation and exploration areas (designated as "**Block 7**" and "**Block 21**") in Ecuador's Amazonian Region. The amounts originally awarded by the arbitral tribunal were reduced by an annulment committee in a decision rendered on May 28, 2021. The Parties agree that, following the annulment decision, the face amount owed to Petitioner under the Award—net of amounts owed to the Republic for its successful counterclaims for environmental contamination, and for certain fees and costs assessed against Petitioner by the arbitral tribunal—is $391,393,984 (not including post-Award interest) (the "**Award Amount**"). *See* Suppl. Joint Status Report (July 27, 2021) (ECF No. 17).

In response to the Petition To Enforce Arbitral Award (ECF No. 1) (the "**Petition**"), the Republic filed its Partial Opposition to Petition To Enforce Arbitral Award and Cross-Motion for Setoff (ECF No. 20) (the "**Cross-Motion**"). In the Cross-Motion, the Republic asks the Court (1) to offset amounts owed under the Award with tax debt that is final and enforceable against Petitioner in Ecuador; and (2) partially to stay enforcement of the Award against amounts representing tax debt that is still being litigated in Ecuador.

The November 8 Decision was rendered after the Parties completed their briefing on the Petition and Cross-Motion. In the Decision, the NCJ remanded *one* of the *seven* tax judgments for which the Republic claimed setoff (one of the only two which were pending before the NCJ on cassation) ***to a lower court*** for further consideration ***on the merits***. This sole remanded judgment—representing $1.7 million of the $50-plus million in tax liability for which the Republic claims setoff—may well be affirmed on the merits.

The November 8 Decision *rejected* Petitioner's contention that it is *not* jointly and severally liable for the tax liability of the "**Contractor**" (*i.e.*, the group of three companies, including Petitioner, that held beneficial ownership stakes in the oil "Blocks" at issue) during the period 2002-2005. Therefore, the only consequence of the November 8 Decision is that the tax liability at issue in the remanded case should be moved from the amounts for which the Republic seeks setoff to the amounts for which the Republic seeks a partial stay of enforcement.

This Court should reject the extraordinary and completely erroneous argument offered by Petitioner, *i.e.*, that the November 8 Decision—remanding a single judgment to a lower court for further consideration on the merits—now bars the Republic from seeking setoff for *any* of the other six judgments at issue. That argument has no merit.

## II.     THE TAX CLAIMS AT ISSUE

Petitioner's Opening Brief on the November 8 Decision omits key facts and confuses others, making it necessary for the Republic to provide a brief review of Ecuadorian procedure for challenging tax assessments before turning to the tax liability at issue. In sum, the process begins if Ecuador's Internal Revenue Service (the "**SRI**")[1] discovers an underpayment of taxes during an

---

[1] The Republic has stated the Spanish-language names for the various agencies, courts, and legal terms mentioned in this brief in its prior submissions and does not repeat them here.

audit. If so, the SRI issues a Bill of Assessment (the "**Assessment**") to the taxpayer. The taxpayer may then pay the amounts determined by the SRI or challenge the Assessment, either before the SRI or directly before the **District Tax Court**, which is part of Ecuador's judicial branch, independent of the SRI. After the District Tax Court has issued its judgment, the losing party (be it the taxpayer or the SRI) may file an appeal to the NCJ. *See* Mem. in Supp. of Cross-Mot. (ECF No. 20-1) at 15-17 (and authorities cited therein).

As also explained in the Republic's prior submissions, if the taxpayer timely challenges the SRI's Assessment of taxes to the NCJ, the tax liability becomes enforceable (1) if the liability is affirmed by the NCJ; or (2) if the taxpayer fails to post an appeal bond while the appeal is pending before the NCJ. *See, e.g.*, *id.* at 14, 16.

As of October 18, 2021—the date on which the Republic submitted its Reply in Support of its Cross-Motion for Setoff (ECF No. 40) (the "**Cross-Motion Reply**")—the Republic sought set-off for *seven* tax claims. Of those seven claims, *five* had already been affirmed by the NCJ (corresponding to the tax years 2004 (Blocks 7 and 21), 2005 (Blocks 7 and 21) and 2006 (Block 21)), in judgments dating back to as early as 2016. For *two* of the claims (specifically, the claim that is the subject of the November 8 Decision and the tax obligation corresponding to the fiscal year 2009 (Block 21)), Petitioner's appeals against the District Tax Court judgments to the NCJ were still pending at the time of the Cross-Motion Reply—but Petitioner had failed to post an appeal bond. The Republic identified the seven claims in Table A to the Cross-Motion Reply, as follows:

3

**TABLE A: FINAL AND ENFORCEABLE TAX CLAIMS AS OF OCT. 18, 2021**

|    | Year | Block | Principal | Interest as of Oct. 11, 2021 | Penalty | Total |
|----|------|-------|-----------|------------------------------|---------|-------|
| 1  | 2002 | 7     | $523,994.02 | $1,162,487.58 | - | $1,686,481.60 |
| *2 | 2004 | 21    | $3,354,529.62 | $6,297,935.99 | - | $9,652,465.61 |
| *3 | 2004 | 7     | $705,817.54 | $876,473.27 | - | $1,582,290.81 |
| *4 | 2005 | 21    | $3,806,765.95 | $6,832,661 | - | $10,639,426.95 |
| *5 | 2005 | 7     | $4,524,950.19 | $8,547,327.66 | - | $13,072,277.85 |
| *6 | 2006 | 21    | $2,242,472.13 | $3,744,464.09 | - | $5,986,936.22 |
| 7  | 2009 | 7     | $4,522,244.38 | $5,729,426.06 | $904,448.88 | $11,156,119.32 |
| **Total** | | | **$19,680,773.83** | **$33,190,775.65** | **$904,448.88** | **$53,775,998.36** |

The five claims marked with an asterisk (*) in this chart represent the five District Tax Court judgments *affirmed by the NCJ*. As discussed below, the November 8 Decision involves only the tax liability for Item No. 1—the tax Assessment for 2002 (Block 7). Accordingly, the amounts stated for Item No. 1 should be moved to the category for which the Republic seeks a partial stay of enforcement. As set forth in **Annex 1** hereto, after that revision is made—and after the amounts are updated for accrued interest through the date of this submission—the Republic seeks setoff for final and enforceable tax judgments in the amount of $52,715,349.62. In addition, the Republic seeks a partial stay of enforcement of the Award in the amount of tax liability that is still being litigated, *i.e.*, $21,120,203.56. *See* Third Coronel Report, Table 4.

## ARGUMENT

**I.   THE NOVEMBER 8 DECISION IS RELEVANT ONLY TO THE TAX ASSESSMENT FOR 2002 (BLOCK 7)**

    **A.   The Issue of "Joint and Several" Liability for 2002-2005**

As explained in greater detail in the Third Coronel Report, the November 8 Decision is relevant only to the Assessment for 2002 (Block 7). It must be noted at the outset that Petitioner's

4

Opening Brief on the Decision (ECF No. 47)—as well as the accompanying Supplemental Expert Report of Carmen Amalia Simone Lasso (ECF No. 47-2)—seriously mischaracterize the Decision. Indeed, they omit its key ruling: that Petitioner *is jointly and severally liable for the taxes of the "Contractor." See* Third Coronel Report ¶¶ 10-12, 34, 38. (As noted previously, Prof. Simone is a partner in the law firm that has represented Petitioner in the local tax litigation.)

As the Republic explained in its prior submissions, from 2002-2005, Petitioner, together with Burlington Resources Oriente Limited ("**Burlington**") and Preussag Energie GMBH ("**Preussag**") (which ultimately assigned its interest in the Blocks to Petitioner and Burlington in 2006), jointly constituted the Ecuadorian State's counterparty (the "**Contractor**") under the Participation Agreements for the Exploration and Exploitation of Blocks 7 and 21 of Ecuador's Amazon Region. Under Ecuadorian law, the Contractor was considered a single entity for tax purposes. Petitioner acted as the "Operator" of Blocks 7 and 21 pursuant to a "Joint Operating Agreement" concluded with Burlington and Preussag.

In 2005, Petitioner entered into a Consortium Agreement with Burlington and Preussag, which established a **Consortium** as of January 1, 2006. Petitioner continued to act as the Operator of the Consortium from 2006-2009. As the Republic also explained, Petitioner—as Operator of the **Contractor** from 2002-2005, and as Operator of the **Consortium** from 2006-2009—was also the legal representative for both entities, and responsible for filing their tax returns and paying their taxes. As such, Petitioner is jointly and severally liable for the tax liability of the **Contractor and Consortium**. *See, e.g.*, Mem. in Supp. of Cross-Mot. at 6-7, 15-17 (and authorities cited therein).

Petitioner, however, has long disputed that it is jointly and severally liable for the tax liability of the Contractor (*i.e.*, during the 2002-2005 period). Accordingly, when Petitioner

5

originally challenged the SRI's tax assessment for 2002 (Block 7), it insisted on challenging it in its individual capacity and emphasized its position that the SRI could not assess the tax liability for the Contractor against Petitioner itself. The District Tax Court held that Petitioner lacked standing to sue in its individual capacity, as opposed to its capacity to represent the Contractor and/or the other companies that formed a part of the Contractor. *See* First Decl. of Andrés Danilo Ordóñez Córdova (Aug. 10, 2021) (ECF No. 23) ¶ 33(a) (describing and exhibiting excerpts of the District Tax Court's judgment). The District Tax Court dismissed Petitioner's challenge to the SRI's assessment on that basis.

In its November 8 Decision, the NCJ emphatically *rejected* Petitioner's argument that it was not jointly and severally liable for the tax debts of the Contractor. The NCJ held that Petitioner "***unquestionabl[y]***" "***assume[d] a joint and several liability***" for the "CONTRACTOR." November 8 Decision at 12 (emphasis added). The November 8 Decision's rejection of Petitioner's argument on this point is consistent with all the other decisions by the NCJ that have addressed it. *See* Third Coronel Report ¶ 12. It also refutes the assertion made by Petitioner and Prof. Simone that Petitioner was not jointly and severally liable for the tax debt of the Contractor during the period 2002-2005.[2]

However, the NCJ disagreed with the District Tax Court's ruling on standing and remanded the case "***to the Lower Court so that it may rule on the challenges to the charges imposed by the Tax Administration***." November 8 Decision at 12 (emphasis added). Accordingly, the District

---

[2] In her first Expert Report submitted to the Court, Prof. Simone stated that she disagreed "with Mr. Coronel's conclusion that the 2002-2005 Assessments could be enforced against Perenco on the basis that Perenco 'is a joint and severally liable debtor' as 'legal representative' and 'consortium member.'" First Report of Carmen Amalia Simone Lasso (ECF No. 33) ¶ 69 (quoting First Report on Ecuadorian Tax Law by Carlos Andrés Coronel Endara (ECF No. 22) ¶ 44. The November 8 Decision ***confirmed Prof. Coronel's position on this point and rejected that of Prof. Simone and Petitioner***.

Tax Court will now review the merits of Petitioner's challenges to the SRI's Assessment for 2002 (Block 7). However, Petitioner can no longer claim that it is not jointly and severally liable for the Contractor's tax debt for 2002 (Block 7), as the NCJ has rejected that argument. *See* Third Coronel Report ¶¶ 10-12. Nonetheless, until the merits of the Assessment for 2002 (Block 7) have been resolved, the Republic acknowledges that the amounts at issue for that Assessment should be moved out of the amounts for which the Republic seeks setoff, and into the amounts for which the Republic seeks a partial stay of enforcement, as reflected in **Annex 1** hereto.

      **B.**    **The November 8 Decision Is Irrelevant to the Other Judgments for Which the Republic Seeks Setoff.**

                **1.**    **The Judgments Based on Tax Liability for the Contractor**

As stated above, and further explained by Prof. Coronel, the judgment for 2002 (Block 7) was unique among the District Tax Court judgments entered against Petitioner based on the tax liability of the Contractor for 2002-2005. That is because the judgment for 2002 (Block 7) was on appeal before the NCJ ***but Petitioner failed to pay the appeal bond***. Under Ecuadorian law, the judgment was therefore enforceable against Petitioner. Second Expert Report on Ecuadorian Tax Law of Carlos Andrés Coronel Endara (ECF No. 42-1) ¶¶ 16-17.

By contrast, all the other District Tax Court judgments against Petitioner based on the tax liability of the Contractor (*i.e.*, Items No. 2-5 in Table A above) are final and enforceable because the NCJ has already ***affirmed*** those judgments. *See id.* ¶¶ 9-10 and Tables 1, 5. As a result, there are simply no further avenues for Petitioner to appeal them. Third Coronel Report ¶¶ 22, 26.

That the NCJ reached a different conclusion on the standing issue in the November 8 Decision than it previously reached with respect to the judgments for 2004-2005 does not change the analysis. In Ecuador's civil law system (as in most civil law systems), the NCJ is not bound by its earlier rulings on standing and came to a different conclusion in that Decision. *See id.* ¶ 22.

7

Moreover, it must be observed that Petitioner could have challenged the earlier rulings on the merits—*if* it had accepted that it was jointly and severally liable for the tax liability of the Contractor (as the NCJ concluded in its November 8 Decision). That was a strategic choice made by Petitioner (and, presumably, Prof. Simone's law firm). In the earlier decisions by the NCJ, that strategic choice resulted in the rejection of Petitioner's substantive challenges on standing grounds.

Finally, as observed by Prof. Coronel, both Petitioner and Prof. Simone confuse the separate issues of "enforceability" and "collectability." As Prof. Coronel explains, all judgments that have been affirmed by the NCJ are now final and enforceable against Petitioner. The process of collection is ministerial—and in this case, purely theoretical—since Petitioner has no assets against which the SRI can collect in any event.[3] Third Coronel Report ¶¶ 25-31. Specifically, the issue with respect to collectability is whether the SRI—in issuing Payment Orders to collect on the judgments—has properly designated Petitioner as the taxpayer ("*contribuyente*"), instead of the person responsible for compliance with the tax obligation ("*responsable*"). Even if the Ecuadorian courts ultimately agree with Petitioner on this point, the SRI could easily correct the designation in a new Payment Order. *Id.* ¶ 37. Accordingly, apart from the sole judgment remanded by the November 8 Decision, all the other judgments based on tax liability for the Contractor against Petitioner are final and enforceable.

---

[3] As the Republic has demonstrated in its prior submissions to the Court—and as Petitioner has effectively admitted—Petitioner has insufficient assets to pay its long-overdue income taxes in Ecuador. Nor has Petitioner ever denied that it plans to transfer the Award proceeds to its ultimate beneficial owners outside Ecuador, without paying any of the income taxes that it owes to the Republic. Therefore, the Republic's Cross-Motion likely provides the sole opportunity for the Republic to recover the substantial debt for income taxes owed by Petitioner, which Petitioner is unable and unwilling to pay in Ecuador. That by itself is sufficient basis for equitable setoff. *See* Cross-Mot. Reply at 8-12.

### 2. The Judgments Based on Tax Liability for the Consortium

As Prof. Coronel also explains, there is no standing issue for the tax judgments based on liability for the Consortium—*i.e.*, for 2006 (Block 21) and 2009 (Block 7). Petitioner has not disputed that it is responsible for the tax liability of the Consortium in its capacity as the Operator and Legal Representative. In addition, the District Tax Court's Judgment for 2006 (Block 21) has been affirmed by the NCJ. It is therefore final and enforceable against Petitioner. And while Petitioner's appeal of the District Tax Court's judgment for 2009 (Block 7) is currently pending before the NCJ, Petitioner has failed to pay the appeal bond. The judgment is therefore enforceable against Petitioner on that basis. Again, neither of these judgments involves the standing issue raised in the November 8 Decision, which is therefore entirely irrelevant to the judgments.

Accordingly, the only consequence of the November 8 Decision is that the tax liability for 2002 (Block 7) should be moved from the amounts for which the Republic seeks setoff to the amounts for which the Republic seeks a partial stay of enforcement.[4]

## II. THE COURT SHOULD REJECT PETITIONER'S OTHER ARGUMENTS AGAINST SETOFF, WHICH THE REPUBLIC HAS ALREADY REFUTED

Although the Parties agreed in their Joint Motion seeking leave to supplement the record and for a briefing schedule that the briefs would be "limited to the issue of the November 8

---

[4] Even assuming *arguendo* that this Court could somehow accept the assertion by Petitioner and Prof. Simone that, based on the November 8 Decision, Petitioner can now challenge all the other tax judgments at issue (which we respectfully submit the Court cannot do), the Court should not deny the Republic's Cross-Motion in its entirety. Rather, the Court should grant the Republic's alternative request for relief, and partially stay enforcement of any judgment it enters against the amount of tax liability in dispute. There is no dispute that it is within the Court's authority to grant such a stay. *See* Mem. in Supp. of Cross-Mot. at 27-28 (and authorities cited therein). While Petitioner has failed to show *any* irregularities or deprivations of due process with respect to *any* of tax cases at issue, Petitioner's reliance on the November 8 Decision and other recent decisions by the District Tax Courts shows that its professed lack of confidence in Ecuador's courts has no application when they rule in its favor.

Decision's relevance to the matters in dispute," Joint Mot. (ECF No. 46) at 3—and the Court so ordered—Petitioner has nonetheless restated and summarized its various arguments in opposition to the application of equitable setoff in this case, which are entirely unrelated to the November 8 Decision. Moreover, Petitioner falsely asserts that the Republic "has not even attempted to address" "most" of its arguments. To the contrary, the Republic has ***responded to and refuted all of Petitioner's arguments*** at length in its prior submissions. We will not attempt to restate our arguments here but instead refer the Court to those submissions.[5] The Republic objects to Petitioner's efforts to use this briefing as a vehicle to restate prior arguments that are irrelevant to the November 8 Decision and reserves all rights in this regard.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Republic's Partial Opposition and Cross-Motion and in the Republic's Reply, the Court should offset the Award amount in favor of Perenco with the amount of Petitioner's outstanding income tax liability that has been fully adjudicated in Ecuador. As explained above, that amount now totals $52,715,349.62. In addition, the Court should stay enforcement against the pending tax claims in the amount of $21,120,203.56 until those claims are fully adjudicated. In the alternative, the Court should stay enforcement of the Award in the full amount of Ecuador's tax claims against Petitioner, $73,835,553.18. The Court should also grant all further relief requested in the Republic's Cross-Motion.

---

[5] Thus, the Republic has refuted Petitioner's argument that setoff is not available against ICSID awards under 22 U.S.C. § 1650a (*e.g.*, Cross-Mot. Reply at 2-6); has shown that Petitioner's invocation of judicial estoppel, waiver, the "revenue rule," "comity," and the District of Columbia statute for enforcing foreign judgements have no merit or are irrelevant (*id.* at 21-22); and has satisfied its burden of establishing that it is entitled to equitable setoff for the tax judgments that are enforceable against Petitioner in Ecuador (*id.* at 6-20). Petitioner's assertion that the Republic has "not even attempted to respond" to these arguments is frivolous at best.

Dated: February 15, 2022						Respectfully submitted,

							*/s/ Alexandre de Gramont*
							Alexandre de Gramont
							D.C. Bar No. 430640
							DECHERT LLP
							1900 K Street NW
							Washington, DC 20006
							Tel: (202) 261-3300
							Fax: (202) 261-3333
							alexandre.degramont@dechert.com

							Michael A. Losco*
							N.Y. Bar No. 5356505
							DECHERT LLP
							1095 Avenue of the Americas
							New York, NY 10036
							Tel.: (212) 698-3500
							michael.losco@dechert.com
							*Admitted *pro hac vice*

							*Counsel for the Respondent*