UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERENCO ECUADOR LTD.,<br><br>                Petitioner,<br><br>v.<br><br>REPUBLIC OF ECUADOR,<br><br>                Respondent. | Civil Action No. 1:19-cv-2943 (JMC) |

## **MEMORANDUM OPINION**

Perenco Ecuador Ltd. ("Perenco"), a company that explores and exploits hydrocarbons internationally, invested in two blocks of oil reserves in Ecuador in the early 2000s.[1] Within a few years, Perenco and Ecuador reached an impasse: Ecuador cancelled Perenco's contracts because Ecuador was not sharing in the extraordinarily high revenues Perenco earned while oil prices soared. The Parties submitted their dispute to the International Convention on the Settlement of Investment Disputes ("ICSID"), an international organization created to arbitrate this type of investor-state dispute. ICSID granted Perenco an Award for about $400 million. Perenco then petitioned this Court to enforce the Award against Ecuador.

In its response, Ecuador asks this Court to set off a portion of the Award with unpaid tax debts that Perenco allegedly owes, and to stay another portion of the Award while other tax issues are resolved. Ecuador also asks this Court to order that post-judgment interest be calculated at the

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

statutory rate specified in 28 U.S.C. § 1961, rather than the post-award interest rate provided in the ICSID Award.

The Court grants Perenco's Petition to Enforce the Arbitration Award. Because there is a genuine dispute about the finality of the tax debts in this case, the Court denies Ecuador's requests to set off a portion of the ICSID Award and to stay the case pending resolution of the Parties' tax dispute. However, the Court agrees with Ecuador that post-judgment interest should be calculated in accordance with 28 U.S.C. § 1961.

### I. BACKGROUND

#### A. ICSID Convention

Created in 1965, the ICSID Convention is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017). Contracting states—those countries that signed the treaty—can use ICSID to resolve disputes with private investors by submitting legal issues to an arbitral Tribunal. *See* ICSID Convention art. 36–49. The Tribunal will consider the issues posed, publish a written decision stating the reasons for its decision, and, if applicable, grant the prevailing party an award. *Id.* art. 48.

A party may challenge the Tribunal's decision in one of two ways. First, a party may request a revision in light of a previously unknown fact. *Id.* art. 51(1). Alternatively, a party may request an annulment of an award based on any of five specified grounds: the Tribunal was not properly constituted; the Tribunal manifestly exceeded its powers; corruption infected the Tribunal's proceedings; there was a serious departure from a fundamental rule of procedure; or the award failed to state the reasons upon which it was based. *Id.* art. 52(1). Enforcement of the original award may be stayed while challenges are resolved. *Id.* art 51(4); 52(5). Upon resolution, the award becomes "binding on the parties and shall not be subject to any appeal or to any other remedy

except those provided for in this Convention." *Id.* art. 53. The parties must then comply with the terms of the award. *Id.*

While the ICSID Convention requires the Tribunal to resolve the merits of a dispute, enforcement of the Tribunal's decision is left to the contracting states. Article 54 provides that "[e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." *Id.* art. 54(1). The enforcement proceedings in the courts of contracting states are highly circumscribed. Courts may not re-adjudicate the merits of an award, they can only "examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro*, 863 F.3d at 102.

The ICSID Convention is not a self-executing treaty. *See Medellin v. Texas*, 552 U.S. 491, 505–06 (2008). The United States therefore enacted legislation to implement its provisions. The relevant statute, 22 U.S.C. § 1650a(a), provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states.

### B. Perenco's Contract and its Termination

The Parties do not dispute the following facts. Perenco, a company owned by French nationals and incorporated under the laws of the Commonwealth of the Bahamas, explores and exploits hydrocarbon resources. *Perenco Ecuador Ltd. v. Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Remaining Issues of Jurisdiction and on Liability (Sept. 12, 2014), ECF 1-3 ¶¶ 1, 46. In September 2002, Perenco invested alongside two other companies in two oil fields—known as Blocks 7 and 21—located in the Ecuadorian Amazon. *Id.* ¶¶ 1, 43, 62. Perenco

3

purchased additional equity in the two blocks a few years later, giving it a majority ownership interest of 57.5% in Block 7, and 53.75% in Block 21. *Id.* ¶ 73.

Before 1993, Ecuador used "service contracts" to facilitate investment in its hydrocarbon industry. *Id.* ¶ 55. In exchange for a fixed fee, international oil companies agreed to develop Ecuador's oil deposits. *Id*. But the fixed payment structure gave oil companies little incentive to maximize oil output. *Id.* ¶¶ 55–56. So, in 1993, Ecuador passed Law 44 and switched to "participation contracts." *Id.* ¶¶ 57–58. This new scheme gave oil companies a share of the oil they produced, meaning that their revenue partially depended on the price of oil. *Id.*

When oil prices skyrocketed in the early 2000s, so too did Perenco's profit margin. Perenco signed its participation contract with Ecuador in 2002 when the price of oil hovered around $15 per barrel. *Id.* ¶ 82. The price quadrupled by 2005, soaring to $60 per barrel. *Id.* ¶ 83. It nearly touched $120 per barrel in 2008. *Id.* The Ecuadorian government grew increasingly dissatisfied with the exorbitant revenues collected by oil companies under participation contracts. *Id.* ¶¶ 84–92. In April 2006, the legislature passed Law 42, stating that the "exploitation [of hydrocarbons] must take place on the basis of national interests and in accordance with the principle of reasonability." *Id.* ¶ 93. The law withheld for the government 50% of "extraordinary income" earned by oil companies, defined as revenue earned when oil prices exceeded the price that was effective at the time the Participation Contracts were executed. *Id.* ¶¶ 94–97. In 2007, the Ecuadorian government expanded its share to 99% of extraordinary revenue. *Id.* ¶ 109.

Realizing the untenable nature of the situation, Perenco and Ecuador began to renegotiate their participation contract. *Id.* ¶¶ 117–22. They nearly reached a compromise in 2008, but Ecuadorian President Rafael Correa effectively ended the negotiations by declaring that all

4

existing participation contracts would be terminated and that new service contracts would be drafted. *Id.* ¶ 123.

### C. The Arbitration

On April 30, 2008, after President Correa publicly stated that all participation contracts would be terminated, Perenco filed for arbitration with ICSID. *Id.* ¶ 6. Perenco alleged that Ecuador violated the participation contract and a treaty between the governments of France and Ecuador, both of which had clauses that required disputes to be resolved through ICSID arbitration.[2] *Id.* Ecuador responded and filed counterclaims against Perenco, alleging that the company caused significant environmental harm and infrastructure damage to Blocks 7 and 21 by violating Ecuadorian environmental laws and failing to properly maintain the oil grids. *Id.* ¶ 280.

While the arbitration proceeding was pending, Ecuador started implementing collection measures—known as "*coactivas*"—against Perenco to recover money allegedly owed under Law 42. *Id.* ¶¶ 150–53. Ecuador seized control of Blocks 7 and 21 and auctioned oil from those blocks for 50% of the market price. *Id.* ¶¶ 159, 167–79, 195. In response, Perenco suspended its operation of the Blocks. *Id.* ¶¶ 203–09. Ecuador then assumed control of the Blocks and officially terminated its participation contract with Perenco by declaring *caducidad*. *Id.* ¶¶ 210, 215.

On September 12, 2014, the ICSID Tribunal held that Ecuador's actions breached the terms of the participation contracts and the treaty. *Id.* ¶ 713. The Tribunal concluded that Ecuador's decision to increase its share of "extraordinary income" under Law 42 from 50% to 99% was unlawful. *Id.* ¶ 411 (contractual violation), *id.* ¶ 607 (treaty violation). Also unlawful was Ecuador's official termination of the participation contracts. *Id.* ¶ 442 (contractual violation as to Block 21), *id.* ¶ 710 (treaty violation). Five years later, on September 27, 2019, the Tribunal

---

[2] Perenco also filed for arbitration against Petroecuador, but those claims were dismissed. *See* ECF 20-1 at 13.

determined a damages amount. *Perenco Ecuador Ltd. v. Republic of Ecuador*, ICSID Case No. ARB/08/6, Award (Sept. 27, 2019), ECF 1-2. The Tribunal ordered Ecuador to pay Perenco $448,820,400 for violating the contract and the treaty and to pay $23,000,000 in legal fees. *Id.* ¶ 1023. However, the Tribunal also found in favor of Ecuador on its counterclaim and ordered Perenco to pay $54,439,517 to repair damage to the environment and damage to the infrastructure of the Blocks, and $6,276,153 for legal fees. *Id.*

### D. The Annulment Decision and Proceedings in this Court

On October 1, 2019, Perenco filed a Petition to Enforce Arbitral Award in this Court, arguing that the Court is obligated to recognize the award "as binding and enforce the pecuniary obligations imposed by that award . . . as if it were a final judgment of a court in that State." ECF 1 ¶ 29 (quoting ICSID Convention art. 54). However, the proceedings in this Court were paused almost immediately when Ecuador asked ISCID to annul the Award. *See* ECF 7; Min. Order 12/26/2019. Ecuador's application for annulment was based on three grounds: that the Tribunal had "manifestly exceeded its powers;" committed "a serious departure from a fundamental rule of procedure;" and "failed to state the reasons" upon which the decision was based. *Perenco Ecuador Ltd. v. Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Annulment (May 28, 2021), ECF 15-1 ¶ 6. At the same time, Ecuador sought to stay enforcement of the award because it was concerned that, if it was forced to pay the award before the annulment issue was resolved, Perenco might never return proceeds owed to Ecuador from a favorable ruling in the annulment proceeding. *Perenco Ecuador Ltd. v. Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Stay of Enforcement of the Award (Feb. 21, 2020), ECF 8-1 ¶ 31. Perenco harbored similar concerns about Ecuador: the company feared that Ecuador might not pay the damages assessed by the Tribunal. *Id.* ¶¶ 21–22. Ecuador's Attorney General and its Minister of Economy and Finance disclaimed Perenco's concerns and pledged to carry out Ecuador's financial obligations. *See* ECF 30 at 17.

6

Ultimately, the ICSID Committee stayed enforcement of the Award on the condition that an official with the "full authority to bind Ecuador" sign and submit a letter committing to pay the Award unconditionally within 60 days of the Committee's decision and attesting that such payment would "not be subject to any enforcement proceedings or to the intervention of Ecuador's courts." ECF 8-1 ¶ 82. On April 20, 2020, Ecuador complied with that requirement by submitting a letter from the Minister of Economy and Finance of the Republic of Ecuador. ECF 15-1 ¶ 23.

The ICSID Committee ultimately held in favor of Ecuador on two of its twenty grounds for annulment. The Committee excised part of the Award because the Tribunal "failed to state reasons" for granting Perenco $25,000,000 for its "loss of opportunity" claim. *Id.* ¶¶ 469–70. The Committee also deducted $9,000,000 from the Award because the Tribunal failed to state reasons for deciding that certain costs were tax-deductible. *Id.* ¶ 574.

The Parties reconciled their mutual debts and settled upon an interest calculation. ECF 17 at 2. In a Supplemental Joint Status Report to this Court, the Parties agreed that Ecuador's net financial obligations reached $391,393,984 "subject to additional post-Award interest until full and final payment." *Id*.

**E. Perenco's Tax Obligations**

While the Parties do not dispute the facts recited above, they strongly dispute the following. According to Ecuador, Perenco was obligated to pay income taxes for itself and its business partners on Blocks 7 and 21, but underpaid its tax liabilities from 2002 through 2009. ECF 20-1 at 24–25; ECF 48-1 at 2. Ecuador alleges that tax debts reaching $52,715,349.62 are final and enforceable against Perenco, while another $21,120,203.56 in tax debts are still in the process of

7

being adjudicated.[3] ECF 48-1 at 2. Ecuador asks this Court to set off the "final and enforceable" tax debts against the Award, and to stay enforcement of a portion of the Award equaling the value of tax debts still being adjudicated. ECF 20-1 at 18–19. Perenco, for its part, contests the finality and enforceability of the tax debts alleged by Ecuador. ECF 30 at 20–21. Perenco claims that it still has valid challenges to those tax assessments, and that litigation of the disputes could take years to resolve. *Id.*

On November 8, 2021, the Tax Chamber of the Ecuadorian National Court of Justice overturned a previous court decision that had held Perenco lacked standing to challenge a portion of the tax debt pending against it. ECF 47 at 5–6; ECF 48 at 9. The Parties disagree about the significance of this decision and its implications for Perenco's other challenges. Perenco believes that it "establishes that all of the purportedly final tax assessments are still subject to valid and meritorious challenges and thus cannot be enforced against Perenco via a set-off in this case." ECF 47 at 1. Ecuador, on the other hand, contends that the impact of the decision is limited to only one of seven claims and should not bar setoff of the other six. ECF 48 at 4.

## II.   LEGAL STANDARD

The Court's review of the Award is guided by both the ICSID Convention and the treaty's implementing statute. The ICSID Convention obligates courts of contracting states to enforce ICSID awards if they are asked to do so by the prevailing party. ICSID Convention art. 54. Enforcing courts are "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Mobil Cerro Negro*, 863 F.3d at 102. Rather, a court "may do no more than examine the judgment's authenticity and

---

[3] The Court notes that earlier filings by Ecuador included different values. *See* ECF 20-1 at 23–24 (seeking setoff for $40,845,760.1 in final and enforceable tax liability and stay of enforcement for $30,671,645.44). The Court accepts the values stated in the most recent date filing, ECF 48, given the ongoing litigation.

enforce the obligations imposed by the award." *Id*. The implementing statute does not alter the procedures outlined by the ICSID Convention. It provides that ICSID awards "shall be enforced and [] given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a.

## III. ANALYSIS

Perenco has petitioned this Court to enforce the ICSID Award. In response, Ecuador seeks to set off a portion of the Award with what it contends are Perenco's final and enforceable tax debts, and to stay enforcement of another portion of the Award while other tax disputes are resolved. Ecuador also asks the Court, over Perenco's objection, to apply the post-judgment interest rate specified in 28 U.S.C. § 1961(a).

The Court declines to reopen the merits of the arbitration proceedings and therefore denies Ecuador's setoff request. The Court also denies Ecuador's stay request for similar reasons: given this Court's obligations under the ICSID Convention and its implementing statute, it is not appropriate to indefinitely mire enforcement of the Award in the hopes that, at some undefined point in the future, the Parties might reach an undisputed setoff. However, the Court agrees with Ecuador that the interest rate dictated by 28 U.S.C. § 1961(a) should govern post-judgment interest.

### A. Ecuador may not set off Perenco's tax debts against the ICSID Award.

The Court concludes that, as a general matter, the ICSID Convention and its implementing statute do not permit setoffs in enforcement proceedings if the parties dispute the validity, finality, or amount of one side of the transaction. Because there is a genuine dispute regarding the finality of the tax debts in this case, those debts may not be set off against the ICSID Award.

*1. Disputed setoffs are not permitted in ICSID enforcement proceedings.*

The right of setoff is a remedy that two entities who owe each other money can use to apply their mutual debts against each other and effectively cancel them out. 80 C.J.S., *Set-Off and Counterclaim* § 6 (updated 2021). Setoff is not appropriate in ICSID enforcement proceedings when it requires adjudication of substantive issues implicating the merits of the award.

Parties must raise substantive challenges to the merits of an award before an ICSID Tribunal. *See Mobil Cerro Negro*, 863 F.3d at 101–02. That is for good reason: if they could withhold such arguments and raise them during enforcement proceedings, the dispute resolution process would be longer, costlier, and could result in inconsistent outcomes between the Tribunal and enforcing courts. Christoph H. Schreuer, et al., *The ICSID Convention: A Commentary* 732 (2d ed. 2009) ("Schreuer, *Commentary*"); *cf. Nat'l Wrecking Co. v. Int'l Brotherhood of Teamsters, Loc. 731*, 990 F.2d 957, 960 (7th Cir. 1993) (determining in non-ICSID arbitration that "[f]ailure to present an issue before an arbitrator waives the issue in an enforcement proceeding"). The ICSID Convention facilitates resolving all aspects of an arbitration by allowing parties to bring "any incidental or additional claim[] or counterclaim[]" so long as it "aris[es] directly out of the subject-matter of the dispute" and stays within the parties' consent and ICSID's jurisdiction. ICSID Convention art. 46. For example, parties may raise ancillary claims based on third-party contracts, interest accruals, or procedural costs. Schreuer, *Commentary*, at 740–50. Parties can even ask for a revision of the award if new facts are discovered after the arbitration concludes. ICSID Convention, art. 51.

But after the time for challenging an award expires, the award becomes "binding" and insulated from "any appeal or [] any other remedy." *Id.* art. 53(1). Enforcement proceedings are therefore restricted affairs. Parties may raise certain procedural claims, perhaps to challenge the court's jurisdiction, *see, e.g.*, *Mobil Cerro Negro*, 863 F.3d at 124–25 (concluding that the district

10

court lacked subject matter jurisdiction and personal jurisdiction in an ICSID enforcement proceeding), but enforcing courts may not reexamine the merits of an ICSID award itself. Enforcing courts may "do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 275 (D.D.C. 2019) (quoting *Mobil Cerro Negro*, 863 F.3d at 102); *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (2019) (same).

Whether a setoff represents a substantive challenge to an award—and is therefore beyond the reach of a court enforcing an ICSID award—depends on whether the parties dispute the proposed offsetting debt. Courts would breach their obligation to enforce ICSID awards if they entertained setoffs where there were genuine questions as to the validity, finality, or amount of the underlying debt. This principle coheres with other cases that have commented on setoffs in ICSID enforcement proceedings. In *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, the Second Circuit Court of Appeals distinguished between "substantive attacks" on ICSID awards and "non-merits challenges," reasoning that Congress did not intend to deprive the parties of the opportunity to litigate the latter in court. 863 F.3d at 121. As an example of a "non-merits" challenge, the Second Circuit posed "the possibility that an offset might apply to [an ICSID award] that would make execution in the full amount improper." *Id.* at 121. Similarly, in *Micula v. Gov't of Romania*, the court assumed that "the defense of setoff . . . is available" in ICSID enforcement proceedings, but it did not allow the defendant to set off disputed transactions, such as tax debts found unlawful by Romanian courts. 404 F. Supp. 3d at 283–84. Instead, the court permitted defendant to set off only payments that both parties agreed were owed to the defendant. *Id.* at 284.

Therefore, a setoff may not be brought in an ICSID enforcement proceeding if the parties dispute the finality, validity, or amount of the underlying debt. Although the Court does not opine

11

on the circumstances in which a setoff might be appropriate in an ICSID enforcement proceeding, it notes that undisputed setoffs, or setoffs involving frivolous objections, could present different circumstances. For example, an undisputed setoff—where both parties agree to the setoff's terms—would not risk offending the ICSID Tribunal's decision; it would be a simple accounting mechanism performed to avoid "the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

> 2. *A setoff is not appropriate in this case because the Parties dispute the finality of Perenco's tax debts.*

Perenco challenges the finality of the tax debts, arguing that it has actionable appeals for each individual debt. ECF 30 at 42. The Court does not opine on the merits of the dispute behind this objection; it finds only that Perenco's objection raises a genuine question about the finality of the judgments that Ecuador seeks to set off against the ICSID Award.

On November 8, 2021, the Tax Chamber of the Ecuadorian National Court of Justice overturned a district court's decision, which had held that Perenco lacked standing to challenge the tax debts assessed against it. ECF 46-1 at 12–13. While the Parties dispute whether this judgment affects Perenco's other debts, it proves that at least one of the debts that Ecuador previously claimed was "final and enforceable" remains subject to further challenges. *See* ECF 48 at 6 (conceding that the tax debts involved in the November 8 decision should be moved from the "final and enforceable" category to "the category for which the Republish seeks a partial stay of enforcement"). The legal uncertainty spawned by this decision raises enough questions about the finality of Perenco's tax debts for the Court to conclude that setoff against the ICSID Award is inappropriate in this enforcement proceeding.

### B. A stay is not appropriate.

Ecuador also asks this Court to stay enforcement of $21,120,203.56 of the ICSID Award while Ecuadorian tax courts finish adjudicating other pending tax claims. ECF 20-1 at 31; ECF 48 at 6. Having held that setoffs of disputed debts are impermissible in ICSID enforcement proceedings, the only reason to stay enforcement of this ICSID Award is the hope that resolution of the pending litigation will lead to an undisputed setoff. But that remote possibility does not justify prolonging enforcement of an ICSID Award indefinitely.

Arbitration is intended to resolve disputes in a quick and efficient manner. 6 C.J.S. Arbitration § 1; Schreuer, *Commentary*, at 7. The ICSID Convention and its implementing statute do not provide a deadline for enforcement of ICSID awards, but their command for courts to "enforce the pecuniary obligations" of ICSID awards evinces a similar sense of urgency. *See* ICSID Convention art. 54; 22 U.S.C. § 1650a(a).

The Parties have not provided a clear timetable as to when the ongoing tax disputes will be resolved. Without seeing an end to those proceedings on the horizon, it is inappropriate to go against the purposes of arbitration by indefinitely staying enforcement of the Award. This is especially true where the substance of the parallel proceedings either should have been raised in the ICSID Tribunal, or stands so far afield from the current subject matter that dragging it into a setoff at this stage would undermine the Court's task at hand. Therefore, the Court declines to stay enforcement of the ICSID Award.

### C. Postjudgment interest shall be calculated at the rate set out in 28 U.S.C. § 1961.

Perenco's Petition to Enforce the Arbitral Award seeks interest for the outstanding liability on the ICSID Award and the costs incurred during arbitration. Mirroring language from the Award, Perenco requests interest on the liability portion of the Award to be computed at "LIBOR for three-month borrowing plus two percent, compounded annually, accruing from December 1, 2019, until

full and final payment." ECF 1 at 10; *see also* ECF 1-2 ¶ 1023. Perenco also requests interest on legal fees and costs to be calculated at "an annual rate of three percent accruing from December 1, 2019, until full and final payment." *Id.* While apparently conceding the applicability of these rates to pre-judgment interest, Ecuador argues that these rates should not be used to calculated post-judgment interest. Instead, Ecuador argues that correct interest rate is found in 28 U.S.C. § 1961(a).[4]

The bulk of federal courts agree with Ecuador when it comes to non-ICSID arbitration judgments. *See Bayer CropScience AG v. Dow Agrosciences LLC*, 680 Fed. App'x 985, 1000 (Fed. Cir. 2017) (collecting cases). The doctrine of merger provides that, "[w]hen [a] plaintiff recovers a valid and final personal judgment, [their] original claim is extinguished and rights upon the judgment are substituted for it." Restatement (Second) of Judgments § 18. As applied to this case, that means that interest on the Award will stop accruing at the previous rate once this judgment is entered, and interest on the new obligation—the judgment to be satisfied—will begin accruing at the rate governing federal monetary judgments.

Perenco does not dispute this general rule but argues that the Parties contracted around it. Courts widely agree that "parties may contract to, and agree upon, a post-judgment interest [rate] other than that specified in § 1961." *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005); *see also, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101–02 (2d Cir. 2004). Parties must express their intent to sidestep the general merger rule in "clear, unambiguous and

---

[4] "Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges." 28 U.S.C. § 1961(a).

14

unequivocal language." *Westinghouse*, 371 F.3d at 102. Perenco contends that the Parties did so in a Supplemental Joint Status Report, in which the Parties agreed that Ecuador's liabilities on the Award were "subject to additional post-Award interest until full and final payment." ECF 30 at 52 (emphasis omitted) (referencing ECF 17). According to Perenco, this language indicates the Parties' intent to apply the interest rates specified in the ICSID Award to post-judgment interest.

Even if it is true that the Parties meant to depart from § 1961, the language in the Supplemental Joint Status Report fails to convey that intent unambiguously. Courts have routinely held that contractual terms calling for a non-statutory interest rate to apply "until an award is paid"—or other variations on the phrase highlighted by Perenco—do not unambiguously communicate an intent to circumvent the general merger rule. *See, e.g.*, *Tricon Energy Ltd. V. Vinmar Int'l, Ltd.*, 718 F.3d 448, 459–60 (5th Cir. 2013) (finding language that specified "post-award interest" would be calculated at a different interest rate from "the date of the award, until paid" did not indicate an intent to circumvent the merger rule); *In re Riebesell*, 586 F.3d 782, 794–95 (10th Cir. 2009) (same for "shall accrue interest until payment"); *Westinghouse*, 371 F.3d at 102 (same for "from the date payment was due to the date payment is made"). For the most part, where courts have found sufficient evidence of intent, parties have explicitly stated that an interest rate different from § 1961 would apply post-*judgment*, as opposed to post-*award*. *See, e.g.*, *Hymel v. UNC, Inc.*, 994 F.2d 260, 265–66 (5th Cir. 1993) (finding clear intent where a promissory note stated that a non-statutory interest rate would apply "both before and after judgment"). Because the Supplemental Joint Status Report did not refer explicitly to post-judgment interest, it is not clear that both Parties intended to apply a non-statutory interest rate.

Perhaps to differentiate this case from others that applied the § 1961 interest rate in analogous circumstances, Perenco points to the unique enforcement scheme outlined in the ICSID

Convention. This Court has a duty to enforce "the pecuniary obligations" imposed by an ICSID award and, according to Perenco, those obligations include applying post-award interest rates to interest accrued after judgment. ECF 30 at 50–51 (citing 22 U.S.C. § 1650a). For two reasons, this distinction fails to make a difference.

First, the ICSID Award contains the same ambiguity problem as the Supplemental Joint Status Report. Just as courts decline to depart from the statutory interest rate in the absence of explicit contract language to the contrary, courts are also hesitant to apply a non-statutory interest rate to post-judgment interest if an arbitration award does not expressly state that result. *See, e.g.*, *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (2004); *Tricon Energy*, 718 F.3d at 459 ("When awarding a non-statutory rate, arbitrators must be . . . clear and unequivocal."). Here, the ICSID Award includes the same language as the Supplemental Joint Status Report: "Post-award interest will accrue from 1 December 2019 until the date of full and final payment." ECF 1-2 ¶ 1023. The Award does not explicitly state that a non-statutory rate applies to post-*judgment* interest, so the Court does not attempt to make that leap.

Second, and more fundamentally, the ICSID Convention itself precludes Perenco's argument. Article 54(3) of the Convention provides that "[e]xecution of the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought."[5] That means that judgments enforcing ICSID awards are subject to § 1961, just like judgments confirming other types of arbitral awards. *Cf. Tricon Energy*,

---

[5] The fact that Article 54(3) uses the word "execution," while other provisions of Article 54 use the word "enforcement," does not alter the analysis. The word choice is likely due to translation difficulties. *See* Schreuer, *Commentary*, at 1134–36. The French and Spanish texts—equally as authoritative as the English version—do not suggest that the different words were meant to convey different meanings, so reconciling the three versions together suggest that the laws of the country in which enforcement is sought should govern enforcement proceedings. *Id.*

718 F.3d at 457 ("A judgment confirming an arbitration award—like any other civil judgment—is subject to § 1961.")

Granting Ecuador's argument involving post-judgment interest rates, while denying its argument concerning setoffs, does not apply the ICSID Convention or § 1650a inconsistently. The ICSID Convention resolves the merits of arbitration disputes through self-contained procedures: parties submit claims, counterclaims, and defenses to the ICSID Tribunal for resolution, then request revision or annulment if they disagree with the Tribunal's award. Enforcement of the Award, on the other hand, steps outside of this framework and is governed by the laws of the country in which enforcement is sought. Because Ecuador's setoff argument raises substantive and disputed issues that could have been raised before the ICSID Tribunal, they may not be raised during enforcement proceedings. But its argument as to the correct post-judgment interest rate, on the other hand, does not touch on the merits of the dispute. Rather, it concerns only enforcement proceedings, which are governed exclusively by United States law in this case.

## IV.  CONCLUSION

Ecuador's requests to set off the ICSID Award and stay the Award's enforcement are denied. Perenco's Petition to Enforce Arbitration Award is granted, though post-judgment interest shall be calculated according to the statutory interest rate specified by 28 U.S.C. § 1961. A separate Order will issue.

**SO ORDERED.**

DATE: March 16, 2023

_____
Jia M. Cobb
U.S. District Court Judge